**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**

CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)

VAN DAELE DEVELOPMENT CORPORATION;
VAN DAELE COMMUNITIES, LLC;
NORTH CORONA 119/AF XXXII, LLC; (see attached)

**DEFENDANTS**

STEADFAST INSURANCE COMPANY; LOCKTON
INSURANCE AGENCY, INC.; LOCKTON INSURANCE
BROKERS, INC.

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

Joseph L. Oliva, SBN 113889
Stephen F. Yurcich, SBN 211188
OLIVA & ASSOCIATES, ALC
11770 Bernardo Plaza Court, Suite 350
San Diego, CA 92128
858-385-0491

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff  ☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant  ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify):  ☐ 6 Multi-District Litigation  ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:  JURY DEMAND:** ☒ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No   ☐ **MONEY DEMANDED IN COMPLAINT:** $ In excess of $75,000

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

28 U.S.C. Section 1332(a). This is an insured's action for professional malpractice against is broker (Lockton) and its insurance company (Steadfast) for breach of contract.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☒ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | BANKRUPTCY | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 422 Appeal 28 USC 158 | FORFEITURE/PENALTY | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | ☐ 423 Withdrawal 28 USC 157 | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | CIVIL RIGHTS | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 443 Housing/Accommodations | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 444 Welfare | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | | ☐ 445 American with Disabilities - Employment | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | REAL PROPERTY | | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety/Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | IMMIGRATION | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 462 Naturalization Application | | | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 463 Habeas Corpus-Alien Detainee | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | ☐ 465 Other Immigration Actions | | | ☐ 871 IRS - Third Party 26 USC 7609 |
| | ☐ 245 Tort Product Liability | | | | |
| | ☐ 290 All Other Real Property | | | | |

ED CV 12 01294 VAP

**FOR OFFICE USE ONLY:** Case Number:

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

CV-71 (05/08)                        CIVIL COVER SHEET                        [AUG – 3 2012]

Page 1 of 2
CCD-JS44

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? [X] No [ ] Yes

If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? [X] No [ ] Yes

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)   [ ] A. Arise from the same or closely related transactions, happenings, or events; or

[ ] B. Call for determination of the same or substantially related or similar questions of law and fact; or

[ ] C. For other reasons would entail substantial duplication of labor if heard by different judges; or

[ ] D. Involve the same patent, trademark or copyright, <u>and</u> one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.

[ ] Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Riverside County | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.

[ ] Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Illinois and Delaware |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.

**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Riverside County | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**

Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _Joseph Oliva_ _____ Date _8/3/12_

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

1   (Attachment to Civil Case Cover Sheet - Plaintiffs cont'd.)

2   NORTH CORONA 120/AF XXXI, LLC;

3   NORTH CORONA 417, LLC;

4   NORTH VALLEY 73, LLC;

5   NORTH VALLEY 95, LLC;

6   LINCOLN RANCH 249/AF XXXIII, LLC;

7   MURRIETA 230, LLC;

8   MURRIETA FIELDS 96, LLC

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

AO 72
(Rev. 8/82)

AO 440 (Rev. 12/09)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

CENTRAL    District of  CALIFORNIA

| | |
|---|---|
| VAN DAELE DEVELOPMENT CORPORATION;<br>(See Attachment) | ) |
| _____ | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No. |
| STEADFAST INSURANCE COMPANY; LOCKTON<br>INSURANCE AGENCY, INC.; LOCKTON<br>INSURANCE<br>BROKERS, INC., *Defendant* | ) |
| | ) |

**CV 12 - 01294  VAP SPx**

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Joseph L. Oliva, SBN 113889
Stephen F. Yurcich, SBN 211188
OLIVA & ASSOCIATES, ALC
11770 Bernardo Plaza Court, Suite 350
San Diego, CA 92128
Tel: 858-385-0491        Fax: 858-385-0499

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

TERRY NAFISI

*CLERK OF COURT*

Date: \[AUG - 3 2012\]    _____

*Signature of Clerk or Deputy Clerk*

(1134)

AO-440

AO 440 (Rev. 12/09)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4(l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.


Date: _____          _____
                                                    *Server's signature*

                                      _____
                                                    *Printed name and title*


                                      _____
                                                    *Server's address*

Additional information regarding attempted service, etc:

1   (Attachment to Summons - Plaintiffs cont'd.)

2   VAN DAELE COMMUNITIES, LLC;

3   NORTH CORONA 119/AF XXXII, LLC;

4   NORTH CORONA 120/AF XXXI, LLC;

5   NORTH CORONA 147, LLC;

6   NORTH VALLEY 73, LLC;

7   NORTH VALLEY 95, LLC;

8   LINCOLN RANCH 249/AF XXXIII, LLC;

9   MURRIETA 230, LLC;

10  MURRIETA FIELDS 96, LLC;

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

AO 72
(Rev. 8/82)

AO-72

1  Joseph L. Oliva, Esq., State Bar No. 113889
2  Stephen Yurcich, Esq., State Bar No. 211188
   OLIVA & ASSOCIATES ALC
3  11770 Bernardo Plaza Court, Suite 350
   San Diego, California  92128
4  Telephone:  (858) 385-0491
   Facsimile:  (858) 385-0499

5  Attorneys for Plaintiffs, VAN DAELE
   DEVELOPMENT CORPORATION; VAN
6  DAELE COMMUNITIES, LLC; NORTH
   CORONA 119/AF XXXII, LLC; NORTH
7  CORONA 120/AF XXXI, LLC; NORTH
   CORONA 417, LLC; NORTH VALLEY
8  73, LLC; NORTH VALLEY 95, LLC;
   LINCOLN RANCH 249/AF XXXIII, LLC;
9  MURRIETA 230, LLC; MURRIETA
   FIELDS 96, LLC

10

11                    **UNITED STATES DISTRICT COURT**

12            **CENTRAL DISTRICT OF CALIFORNIA – RIVERSIDE**

13  VAN DAELE DEVELOPMENT              CASE NO.  CV12 - 01294
    CORPORATION;
14  VAN DAELE COMMUNITIES, LLC;
    NORTH CORONA 119/AF XXXII, LLC;    **PLAINTIFFS' COMPLAINT**
15  NORTH CORONA 120/AF XXXI, LLC;     **FOR:**
    NORTH CORONA 417, LLC;
16  NORTH VALLEY 73, LLC;             1. **Breach of Contract;**
    NORTH VALLEY 95, LLC;            2. **Breach of the Implied Covenant**
17  LINCOLN RANCH 249/AF XXXIII,         **of Good Faith and Fair Dealing;**
    LLC;                            3. **Reformation;**
18  MURRIETA 230, LLC;              4. **Declaratory Relief;**
    MURRIETA FIELDS 96, LLC.        5. **Professional Negligence**

19              Plaintiffs,          **[DEMAND FOR JURY TRIAL]**

20  v.

21  STEADFAST INSURANCE COMPANY;
    LOCKTON INSURANCE AGENCY,
22  INC.;
    LOCKTON INSURANCE BROKERS,
23  INC.,

24

25              Defendants.

26      Plaintiffs VAN DAELE DEVELOPMENT CORPORATION; VAN DAELE

27  COMMUNITIES, LLC; NORTH CORONA 119/AF XXXII, LLC; NORTH

28  CORONA 120/AF XXXI, LLC; NORTH CORONA 417, LLC; NORTH VALLEY

                                    1

73, LLC; NORTH VALLEY 95, LLC; LINCOLN RANCH 249/AF XXXIII, LLC; MURRIETA 230, LLC; and MURRIETA FIELDS, 96, LLC, hereby allege as follows:

## JURISDICTION AND VENUE

1.     Jurisdiction in this Court is proper under 28 U.S.C. Section 1332(a) in that there is complete diversity of citizenship between Plaintiff and Defendant and the amount in controversy exceeds $75,000.00.

2.     Venue is proper in this Court pursuant to 28 U.S.C. Section 1391(a) in that a substantial part of the events or omissions giving rise to the claim occurred, and the property that is the subject of the action is situated, in this district.

## THE PARTIES

1.     VAN DAELE DEVELOPMENT CORPORATION is a California Corporation; VAN DAELE COMMUNITIES, LLC, is a California Limited Liability Company; NORTH CORONA 119/AF XXXII, LLC, is a California Limited Liability Company; NORTH CORONA 120/AF XXXI, LLC, is a California Limited Liability Company; NORTH CORONA 417, LLC, is a California Limited Liability Company; NORTH VALLEY 73, LLC, is a California Limited Liability Company; NORTH VALLEY 95, LLC, is a California Limited Liability Company; LINCOLN RANCH 249/AF XXXIII, LLC, is a California Limited Liability Company; MURRIETA 230, LLC, is a California Limited Liability Company; and MURRIETA FIELDS, 96, LLC, is a California Limited Liability Company (Hereinafter collectively referred to as "VAN DAELE").

2.     VAN DAELE is informed and believes and thereon alleges that Defendant STEADFAST INSURANCE COMPANY ("STEADFAST") is a Delaware corporation.   STEADFAST was and is at all relevant times either admitted to do business as an insurer under the laws of the State of California or authorized to sell insurance in the State of California through a licensed surplus lines broker.

/ / /

3.     VAN DAELE is informed and believes and thereon alleges that LOCKTON INSURANCE AGENCY, INC. is an active Missouri Corporation, with its principal place of business in Kansas City, Missouri, that was formerly doing business in California as LOCKTON INSURANCE BROKERS, INC. until LOCKTON INSURANCE BROKERS, INC. was merged out of existence in California on March 12, 2007. LOCKTON INSURANCE AGENCY, INC. has surrendered its right to conduct business in the State of California, but it is still an active Missouri Corporation.

4.     From 2002 through 2006, LOCKTON INSURANCE BROKERS, INC. was admitted to do business under the laws of the State of California as an insurance agent and/or broker, authorized to procure insurance in the State of California and was an appointed and authorized agent of Zurich North America the parent Company of STEADFAST.

5.     LOCKTON INSURANCE BROKERS, INC., and LOCKTON INSURANCE AGENCY, INC are hereinafter referred to as "LOCKTON".

## THE INSURANCE POLICIES

6.     During 2002, VAN DAELE was introduced to the STEADFAST Home Builder Protective Insurance Program ("HBPP") through its broker LOCKTON.

7.     On August 1, 2002, STEADFAST issued Home Builders Protective Insurance Policy No. HBP 3696726-00 to VAN DAELE effective August 1, 2002 through August 1, 2003, with limits of liability of five million dollars ($5,000,000) per occurrence and a general aggregate limit of ten million dollars ($10,000,000).  A true and correct copy of Policy No. HBP 3696726-00 is attached hereto as **Exhibit "A"** and incorporated herein by reference.

8.     The HBP 3696726-00 Policy contained the following self-insured retention ("SIR") provisions under Section IV-Self Insured Retention, in pertinent part:

> 1.     Our obligation under Section I-Coverages to pay damages or "repair costs" applies only to the amounts of damage or "repair costs" in excess of any "Self Insured Retention" amounts stated in the Declarations.

3

***

3.     "Self-Insured Retention" Amounts

a.     The Each Occurrence amount shown in the Declarations is the most you will pay for all "self insured retention" amounts arising out of one "occurrence," offense or "construction occurrence" or any single loss involving any combination of "occurrence," offense and "construction occurrence".

b.     The Self-Insured Retention Amount is the most you will pay for all "self-insured retention" amounts under this policy. If no value is shown, then the "self insured retention" aggregate shall be unlimited.

The "Self Insured Retention" amounts of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last proceeding period for purposes of determining the "Self Insured Retention" aggregate, if any.

9.     As to Coverage(s) C-E, this policy defines "Construction occurrence" to mean: an accident "including continuous or repeated exposure to substantially the same general harmful conditions" and a "construction occurrence" involving substantially similar damages to "your work" within the same project, phase, subdivision, community, neighborhood or other similar local area and constructed under a common set of contract documents by substantially the same subcontractors will be considered a single "construction occurrence."

10.     STEADFAST issued Endorsement Number nine (9) to Policy No. HBP 3696726-00 which modified the policy by providing that the Self Insured Retention aggregate is amended to reflect a $500,000 limit for "all occurrences".

11.     STEADFAST's authorized representative clarified that this endorsement was meant to reflect a per-Project aggregate, rather than as an annual aggregate, and that the same endorsement will attach to the STEADFAST policy numbered HBP

///

4

COMPLAINT

3696726-01.  A true and correct copy of Endorsement 9 is attached hereto as **Exhibit "B"** and incorporated herein by reference.

12.  STEADFAST issued insurance Policy No. HBP 3696726-01 to VAN DAELE effective from August 1, 2003 through December 1, 2004, with limits of liability of five million dollars ($5,000,000) per occurrence and a general aggregate limit of ten million dollars ($10,000,000).  (A true and correct copy of Policy No. HBP 3696726-01 is attached hereto as **Exhibit "C".**)

13.  The Policy No. HBP 3696726-01 contained the following SIR provisions under Section IV, in pertinent part:

> 1.    Our obligation under Section I-Coverages to pay damages or "repair costs" applies only to the amounts of damage or "repair costs" in excess of any "Self Insured Retention" amounts stated in the Declarations.
>
> ***
>
> 3.    "Self-Insured Retention" Amounts
>
> > a.    The Each Occurrence amount shown in the Declarations is the most you will pay for all "self insured retention" amounts arising out of one "occurrence," offense or "construction occurrence" or any single loss involving any combination of "occurrence," offense and "construction occurrence".
> >
> > b.    The Self-Insured Retention Amount is the most you will pay for all "self-insured retention" amounts under this policy.  If no value is shown, then the "self insured retention" aggregate shall be unlimited.
>
> The "Self Insured Retention" amounts of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months.  In that case, the additional period will be deemed part of the last proceeding period for purposes of determining the "Self Insured Retention" aggregate, if any.

14.  As to Coverage(s) C-E, this policy defines "Construction occurrence" to mean: an accident "including continuous or repeated exposure to substantially the

same general harmful conditions" and a construction occurrence "that affect more than one "home" shall be deemed to constitute a single "construction occurrence" if all such homes": (1) Are in the same subdivision or constructed as part of the same construction project; and (2) Were constructed in accordance with the same set of construction plans; and (3) Have been affected by the same or substantially the same "construction defect" or "construction defects."

15.    STEADFAST issued Endorsement Number nine (9) which was intended to modify Policy No. HBP 3696726-01 which modified this policy by providing that the Self Insured Retention aggregate is amended to reflect a $500,000 limit for "all occurrences".     STEADFAST's authorized representative clarified that this endorsement was meant to reflect a per-Project aggregate but reads as an annual aggregate, and that the same endorsement will attach to the STEADFAST policy numbered HBP 3696726-01 above.

16.    At the time of the renewal of Policy No. HBP 3696726-00, VAN DAELE was never notified that endorsement number nine was either deleted or withdrawn or was not included as to Policy No. HBP 3696726-01, and VAN DAELE therefore believed and understood that Endorsement Number nine (9) was included in policy No. HBP 3696726-01.

17.    STEADFAST issued insurance Policy No. HBP 3696726-02 to VAN DAELE effective from December 1, 2004 through December 1, 2006, with limits of liability of twenty -five million dollars ($25,000,000) per occurrence and a general aggregate limit of fifty million dollars ($50,000,000).   (A true and correct copy of Policy No. HBP 3696726-02 is attached hereto as **Exhibit "D".**)

18.    The HBP 3696726-02 Policy contained the following SIR provisions under section IV, in pertinent part:

> 1.    Our obligation under Section I-Coverages to pay damages or "repair costs" applies only to the amounts of damage or "repair costs" in excess of any "Self Insured Retention" amounts stated in the Declarations.

\*\*\*

3.    "Self-Insured Retention" Amounts

a.    The Each Occurrence amount shown in the Declarations is the most you will pay for all "self insured retention" amounts arising out of one "occurrence," offense or "construction occurrence" or any single loss involving any combination of "occurrence," offense and "construction occurrence".

b.    The Self-Insured Retention Amount is the most you will pay for all "self-insured retention" amounts under this policy. If no value is shown, then the "self insured retention" aggregate shall be unlimited.

The "Self Insured Retention" amounts of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last proceeding period for purposes of determining the "Self Insured Retention" aggregate, if any.

19.  As to Coverage(s) C-E, this policy defines "Construction occurrence" to mean: an accident "including continuous or repeated exposure to substantially the same general harmful conditions" and a construction occurrence "that affect more than one "home" shall be deemed to constitute a single "construction occurrence" if all such homes": (1) Are in the same subdivision or constructed as part of the same construction project; and (2) Under Coverage C, have been affected by the same or substantially the same construction defect or construction defects; or (3) Under Coverage D, have been affected by the same or substantially the same general, harmful conditions."

20.  At the time of the renewal of Policy No. HBP 3696726-01, VAN DAELE was never notified that endorsement number nine was either deleted or withdrawn or was not included as to Policy No. HBP 3696726-02 and VAN DAELE therefore believed and understood that Endorsement Number nine (9) was included in Policy No. HBP 3696726-02.

21. Collectively the STEADFAST Policy Nos. HBP 3696726-00, HBP 3696726-01, and, HBP 3696726-02 will be referred to as the "STEADFAST POLICIES" or the "POLICIES".

22. As to all policies set forth herein, Plaintiff and STEADFAST agreed the SIR, under section IV, paragraphs 3(a) and (b) of the STEADFAST POLICIES would \not exceed $500,000 regardless of the number of years of escrow closing as long as VAN DAELE renewed with STEADFAST.   At all material times, VAN DAELE renewed the STEADFAST POLICIES.

## THE CLAIMS

23. From 2002 to the present, STEADFAST had the obligation and duty to manage, process, and monitor the SIR's of the STEADFAST POLICIES.  During this time period, various lawsuits were filed against VAN DAELE triggering the duty to defend and indemnify under the STEADFAST POLICIES including the following actions: (1) Bolden, et. al. Van Daele Development Corp.  Riverside Superior Court Case No. RIC 10003718; (2) Mota, et. al. v. Van Daele Communities, LLC, et. al. Riverside Superior Court Case No. RIC 1101013; (3) Hubbard, et al. v. Van Daele Development Corp. Riverside Superior Court Case No. RIC 1205539; and (4) Frick v. Van Daele Development Corp. Riverside Superior Court Case No. RIC 1204600 (hereinafter the "Underlying Actions").

24. STEADFAST was timely put on notice of the Bolden, Mota, Hubbard, and Frick matters.

25. All the homes at issue in the Bolden matter were built in the same geographic area, in the city of Corona, by substantially the same set of trade contractors under a similar set of plans.  The homes in the Bolden matter were all part of a Project commonly known and referred to as Eastvale.

26. All the homes at issue in the Mota matter were built in the same geographic area in the city of Murrieta, by substantially the same set of trade
///

1   contractors under a similar set of plans.  The homes in the <u>Mota</u> matter were all part of

2   a Project commonly known and referred to as Lincoln Ranch.

3        27.   Representatives of VAN DAELE had a meeting with representatives from

4   LOCKTON, including Mr. Phil Collins and Mr. Michael Hopson on behalf of

5   STEADFAST.   Mr. Hopson was the Vice President of Underwriting for

6   STEADFAST.

7        28.  At that meeting, VAN DAELE asked Mr. Hopson to confirm how

8   STEADFAST would apply the SIR.  Mr. Hopson represented he would look at the

9   Projects with similar geographic areas as "one occurrence" and consolidate

10  deductibles (SIR's).  Mr. Hopson indicated that one deductible/SIR would apply even

11  if the claim involved homes that closed escrow over different years.  Mr. Hopson

12  stated that it was his intent, as the Vice President of Underwriting for STEADFAST,

13  to consolidate deductibles and treat the claims under one $500,000 SIR regardless of

14  the number of homes or the number of years it took to close escrow on those homes

15  since VAN DAELE renewed the STEADFAST POLICIES.

16       29.  At all material times STEADFAST knew VAN DAELE DEVELOPMENT

17  CORPORATION served as the General Contractor.   Moreover, STEADFAST

18  understood that VAN DAELE, like many other builders, used separate LLC's in order

19  to generate capital to finance Projects including Eastvale and Lincoln Ranch.

20  Mr. Hopson reaffirmed on behalf of STEADFAST that the use of LLC's would not be

21  the basis for triggering a separate SIR.  Mr. Hopson reaffirmed his understanding to

22  VAN DAELE that under the HBPP program the SIR would be based on the factors

23  outlined above, including the geographic locations of the neighborhoods.

24       30.  Mr. Hopson reaffirmed to VAN DAELE and LOCKTON that if the homes

25  were built in the same geographic area, by substantially the same set of trade

26  contractors under a similar set of plans, the Project would be treated as one Project

27  and as a single occurrence with respect to construction defects with only one $500,000

28  SIR.

31. On December 1, 2010, Phil Collias of LOCKTON spoke to Mr. Hopson again and Mr. Hopson confirmed that the <u>Bolden</u> lawsuit would be defined by STEADFAST as one Project with a single $500,000 SIR.

32. Following the meetings with LOCKTON and STEADFAST, VAN DAELE discovered STEADFAST's claims department was imposing an SIR greater than the $500,000 Project Aggregate referenced in the STEADFAST POLICIES, and notwithstanding the promises made by STEADFAST, through its authorized agent, Vice President, Mr. Hopson of Underwriting, that the aggregate of $500,000 was the maximum amount VAN DAELE would be required to pay per Project even if completion of the Project extends into multiple policy years of the STEADFAST POLICIES since VAN DAELE has renewed the STEADFAST POLICIES.

33. On or about March 3, 2011, VAN DAELE sent a demand letter to STEADFAST reiterating its demand for reimbursement of $920,330.47 in <u>Bolden</u> reflecting the amount paid in investigation, repairs, defense and/or settlement payments over the SIR.

34. On or about May 11, 2011, STEADFAST failed and refused to fully reimburse VAN DEALE's request for reimbursement of the total amount of $920,330.47 arising from the <u>Bolden</u> Action.   Instead, STEADFAST submitted checks totaling $846,000, but threatened VAN DAELE with litigation if VAN DAELE negotiated the payments.

35. As of the date of filing this Complaint VAN DAELE has incurred, in the <u>Bolden</u> matter, defense fees and costs as well as costs incurred for claim administration, settlement and repair, including but not limited to investigation, repair work, replacement and tasks unrelated to normal customer service costs and expenditures in excess of the $500,000 SIR, all in an amount in excess of the $75,000 jurisdictional requirements of this Court, in an amount to be determined at time of trial.

/ / /

36.   As of the date of filing this Complaint VAN DAELE has incurred, in the Mota matter, fees and costs in connection with its defense as well as costs incurred for claim administration and repair, including but not limited to investigation, repair work, replacement and tasks unrelated to normal customer service costs and expenditures in excess of the $500,000 SIR, all in an amount in excess of the $75,000 jurisdictional requirements of this Court in an amount to be determined at time of trial.

37.   By requiring VAN DAELE to pay more than one $500,000 SIR for the Bolden and Mota matters STEADFAST purposefully ignores the underwriting intent expressed by STEADFAST at the time the POLICIES were issued wherein the parties agreed to limit the SIR to an aggregate of $500,000 even if completion of the Project extended into multiple policy years. In doing so, VAN DAELE has already satisfied the SIR's, yet STEADFAST continues to demand that VAN DAELE owes STEADFAST substantial sums for the SIR's under the STEADFAST POLICIES in connection with the Underlying Actions.

38.   STEADFAST at all material times had a duty to properly and accurately identify, measure, and process VAN DAELE payments of SIR amounts based on the mutual understanding of the parties.

39.   STEADFAST refused to comply with the mutual understanding of the parties at time of placement and therefore as confirmed by STEADFAST'S underwriter that the aggregate SIR of $500,000 was the maximum limit VAN DAELE would be required to pay per Project irrespective of the close of escrow dates for the Project.   As a result VAN DAELE has been damaged in excess of the minimum jurisdiction of this court.

40.   Despite   the   mutual   agreement   of   the   parties   as   confirmed   by STEADFAST's Vice President of Underwriting, STEADFAST is wrongfully claiming it is owed in excess of $365,677 in connection with the Bolden and is claiming that multiple SIR's apply in the Mota despite the fact that Mota constitutes a single Project pursuant to the Policies definition of a "Construction Occurrence" and based upon the

1   representations made to VAN DAELE by Mr. Michael Hopson the Vice President of

2   Underwriting for STEADFAST.

3       41.   STEADFAST has violated the agreement between the Parties by

4   attempting to employ an interpretation of the policy that is contrary to the agreement

5   reached between the Parties and STEADFAST'S own underwriting intent.

6   STEADFAST'S actions constitute self-dealing as STEADFAST is fraudulently

7   claiming the SIR's for <u>Bolden</u> and <u>Mota</u> have not been satisfied when in fact the SIR's

8   have been satisfied by payment of defense fees and costs, cost in the investigation, and

9   repair and attendant work in the resolution of the <u>Bolden</u> claim and payment of similar

10  expenses in connection with the ongoing defense of VAN DAELE in <u>Mota</u>.

11      42.   STEADFAST has been provided by VAN DAELE all relevant invoices for

12  attorneys' fees and costs and invoices for repair work and investigation of the Bolden

13  and Mota claims, but STEADFAST wrongfully continues to demand payment

14  of purported SIRs despite the fact that the $500,000 aggregate SIR's have been

15  satisfied in both the <u>Bolden</u> and <u>Mota</u> matters.

## FIRST CLAIM

### Breach of Written Contract

### (As To STEADFAST)

19      43.   VAN DAELE repeats, re-alleges and incorporates by this reference each

20  and all of the allegations contained in this Complaint.

21      44.   Defendants entered into certain written contracts with VAN DAELE to

22  provide comprehensive general liability insurance to VAN DAELE and other named

23  insureds.

24      45.   STEADFAST have breached one or more provisions of the contracts of

25  insurance issued by each and every one of them in favor of VAN DAELE by

26  continuing to demand monies to satisfy SIR's under each of the STEADFAST

27  POLICIES which have been satisfied and refusing to reimburse VAN DAELE for

28  payments made in excess of the SIR's.

46. As set forth in the STEADFAST POLICIES and agreed to by STEADFAST's Vice President of Underwriting, Mr. Michael Hopson, VAN DAELE was entitled to be fully and completely defended once the aggregate SIR of $500,000 was satisfied for the <u>Bolden</u> and <u>Mota</u> matters without any further payment.

47. Defendants' refusal to reimburse VAN DAELE for indemnity defense payments, costs of investigation, cost of repairs and attendant expenses made in excess of the SIR's has caused VAN DAELE financial harm by requiring VAN DAELE to fund its own defense unnecessarily through payment of attorney fees and indemnity after satisfying the SIR.

48. As a direct and proximate result of STEADFAST's breach of its duties under the STEADFAST POLICIES, VAN DAELE has suffered financial damages in excess of the $75,000 jurisdictional requirements of this Court, in an amount to be determined according to proof at time of trial.

49. Because STEADFAST has continued to insist on additional payments of SIRs under the STEADFAST POLICIES as to both the <u>Bolden</u> and <u>Mota</u> matters, VAN DAELE continues to be damaged in an amount to be proven according to proof at time of trial.

## SECOND CLAIM

### Breach of the Implied Covenant of Good Faith and Fair Dealing
### (As To STEADFAST)

50. VAN DAELE repeats, re-alleges and incorporates by this reference each and all of the allegations contained in this Complaint.

51. At all material times, STEADFAST had the duty to act fairly and in good faith toward VAN DAELE as its insured in carrying out its responsibilities under the respective STEADFAST POLICIES of insurance. In particular, STEADFAST was aware of the underwriting intent as expressed by Mr. Michael Hopson, Vice President of Underwriting for STEADFAST that a single $500,000 SIR would apply to any lawsuit where all homes in the lawsuit were built in the same geographic area, by

1    substantially the same set of trade contractors under a similar set of plans, irrespective

2    of the number of years close of escrow took place.   This underwriting intent was

3    known to STEADFAST and expressed to Plaintiff both at time of placement and

4    thereafter.   STEADFAST, by and through its claims adjustors, now refuse to

5    acknowledged this underwriting intent.

6         52.   Inherent in the STEADFAST POLICIES issued by STEADFAST to VAN

7    DAELE as an insured was an implied covenant of good faith and fair dealing, which

8    imposed upon STEADFAST the duty to deal fairly and honestly with VAN DAELE

9    in good faith and to do nothing to the detriment of VAN DAELE, or to impair,

10   interfere with, hinder or potentially deprive VAN DAELE of its rights and benefits

11   under said insurance policies, including defense of claims asserted against VAN

12   DAELE on account of property damage caused by an occurrence, falling within

13   or potentially falling within the coverage of, or as defined in, each insurance policy

14   referenced herein.

15        53.   Pursuant to the STEADFAST POLICIES, STEADFAST has an obligation

16   to act fairly and in good faith to VAN DAELE to promptly and reasonably investigate,

17   ascertain and comply with STEADFAST's underwriting intent and to make the

18   requisite inquiry with the underwriter who placed the policy.   STEADFAST herein is

19   subject to an implied covenant of good faith and fair dealing such that no party will

20   disturb the rights of the other to obtain the full benefits of the contracts.

21   STEADFAST has breached the implied covenant of good faith and fair dealing when

22   refusing to properly apply the Project Aggregate of $500,000 as the agreed upon

23   maximum limit Van Deale will be required to pay per Project, even if the close of

24   escrows took place over multiple years.   Notwithstanding STEADFAST's

25   underwriting intent, STEADFAST refuses to recognize and acknowledge the agreed

26   upon SIR notwithstanding repeated requests to do so.

27        54.   VAN  DAELE  is  informed,  believes,  and  thereon  alleges,  that

28   STEADFAST breached its respective obligations to act fairly and in good faith

towards  VAN DAELE under the STEADFAST POLICIES by committing, among other things, the following acts and omissions:

   a. Unreasonably refusing to immediately reimburse VAN DAELE its out of pocket costs, expenses, repairs, defense fees and costs relating to the Bolden and Mota Projects after the satisfaction of the SIR's aggregate of $500,000;

   b. Refusing to conduct a reasonable inquiry with its underwriters and investigation and unreasonably and knowingly refusing to reimburse VAN DAELE in connection with out of pocket costs, expenses and fees arising out of the Bolden and Mota matters after the respective SIR aggregates of $500,000 were each satisfied;

   c. Failing to properly manage, process, and oversee the SIR's under the STEADFAST POLICIES in conjunction with the parties expectation and agreement;

   d. Refusing to agree with VAN DAELE and its own Vice President of Underwriting that the SIR's under the STEADFAST POLICIES were satisfied after satisfaction of the SIR aggregate of $500,000;

   e. Continuing to demand payment in the Underlying Actions despite satisfaction of the SIR's under the STEADFAST POLICIES;

   f. Refusing to provide VAN DAELE with any reasonable or justifiable basis for the decision to refuse to reimburse VAN DAELE for monies paid in excess of the SIR's under the STEADFAST POLICIES for the defense of VAN DAELE in the Underlying Actions.  In doing so, STEADFAST refuses to adhere to its own underwriting intent concerning the SIR's and has refused to explain how it is not bound by its own underwriter's intent as communicated to Plaintiff and its Broker.

   g. Causing  VAN DAELE severe financial hardship, including, but not limited to out of pocket fees, costs, repairs, and investigation;

   h. Refusing to reimburse VAN DAELE costs expended on the Bolden and Mota matters notwithstanding a written promise to do so under the STEADFAST POLICIES once the $500,000 per Project aggregate SIR was satisfied;

15
COMPLAINT

i. Adopting unreasonable and unwarranted interpretations and applications of SIR provisions and exclusions in the STEADFAST POLICIES, refusing to reasonably apply the Project Aggregate of $500,000 as the agreed upon maximum limit Van Deale would be required to pay per Project as the required SIR under the STEADFAST POLICIES, even if close of escrow of the <u>Bolden</u> and <u>Mota</u> Projects extended into multiple years.

j. Unreasonably, purposefully and intentionally interpreting the allegations and claims of the plaintiffs in the Underlying Actions inaccurately solely in an attempt to avoid coverage obligations owed to VAN DAELE;

k. Refusing to timely, promptly and without delay, pay for the reasonable and necessary defense incurred after tender;

l. Causing VAN DAELE severe financial hardship, including, but not limited to repair costs, expenses, attorney's fees and costs, by refusing to reimburse VAN DAELE for monies paid in excess of the SIR's under the STEADFAST POLICIES;

m. Interpreting the provisions of the policies and the factual circumstances so as to resolve ambiguities and uncertainties against VAN DAELE and to favor their own economic interests;

n. Misrepresenting the insurance policy provisions in the STEADFAST POLICIES as agreed upon at time of placement;

o. Embarking on a course of conduct and pattern and practice, whereby STEADFAST has refused to acknowledge the obligations owed to VAN DAELE.

55. The above despicable conduct by STEADFAST has been and continues to be unreasonable, capricious, arbitrary, and constitutes a breach of the covenant of good faith and fair dealing.

56. Such conduct enumerated above was malicious, unreasonable, oppressive, fraudulent, and despicable, had improper motives, including a desire by STEADFAST

to cause injury, vex, annoy, and oppress Plaintiff, and were carried on by STEADFAST with a willful and conscious disregard of Plaintiff's rights and economic safety by intending to secretly profit by charging VAN DAELE for multiple SIR's after its Vice President of Underwriting agreed that the Project Aggregate of $500,000 is the maximum limit Van Deale would be required to pay per Project, even if close of escrows extended into multiple years.  In undertaking such conduct, VAN DAELE is owed reimbursement over the SIRs for all payments improperly withheld by STEADFAST.

57.  The respective officers, directors and managing agents of STEADFAST participated in, authorized and ratified the wrongful conduct of STEADFAST.

58.  As a result of the bad faith conduct of STEADFAST,  VAN DAELE has incurred substantial attorney's fees, costs and expenses in defense, repair, loss adjustment, mitigation, investigation and settlement and other costs and expenses and has been required to bring this Complaint to enforce its right as an insured under the STEADFAST POLICIES mentioned herein.  VAN DAELE is entitled to recover as damages against STEADFAST, all the aforementioned fees, costs and expenses which it has incurred in excess of the satisfied SIR's together with interest thereon.  VAN DAELE has suffered damages and will continue to suffer damages within the jurisdiction of this Court, according to proof.

59. VAN  DAELE  is  further  entitled  to  recover  as  damages  against STEADFAST all fees, expenses and costs incurred in this action to enforce its rights under the STEADFAST POLICIES, plus interest thereon, according to proof.

60.  The above described conduct of STEADFAST has been and continues to be unreasonable, capricious and arbitrary, and constitutes a breach of the implied covenant of good faith and fair dealing contained in the STEADFAST POLICIES referred to above in this Complaint.

61.  The above-described conduct further constitutes malicious, oppressive and despicable conduct and conscious disregard of VAN DAELE's rights, and stems from

improper and evil motives, including STEADFAST's desire to reduce or avoid their obligations to VAN DAELE, so as to justify an award of punitive and exemplary damages.

### THIRD CLAIM

### Reformation

### (As to STEADFAST)

62.  VAN DAELE repeats, re-alleges and incorporates by this reference each and all of the allegations contained in this Complaint.

63.  At all relevant times, the parties mutually agreed the aggregate SIR of $500,000 was the maximum limit VAN DAELE would be required to pay under the STEADFAST POLICIES for Eastvale (<u>Bolden</u>), Lincoln Ranch (<u>Mota</u>), <u>Frick</u>, or <u>Hubbard</u> even if the Projects extended into multiple policy years as set forth herein.

64.  To the extent that these STEADFAST POLICIES, as written, fail to include the mutual agreement that the aggregate SIR of $500,000 was the maximum limit VAN DAELE would be required to pay under the STEADFAST POLICIES even if the Projects extended into multiple policy years, then the STEADFAST POLICIES fail to accurately reflect the intent of the parties.

65.  VAN DAELE took all steps as reasonably necessary to assure that the STEADFAST POLICIES did provide that the aggregate SIR of $500,000 was the maximum limit VAN DAELE would be required to pay under the STEADFAST POLICIES per Project even if the Project extends into multiple policy years.  Such failure therefore resulted from unilateral or mutual mistake or fraud by STEADFAST and/or its authorized agents and representatives.

66.  Despite repeated requests, STEADFAST has refused to reform the policies, and instead, wrongfully and unreasonably refuses to correct the STEADFAST POLICIES to include the mutual agreement of the Parties that the aggregate SIR of $500,000 was the maximum limit VAN DAELE would be required to pay under the STEADFAST POLICIES per Project, including but not limited to the

1  Eastvale and Lincoln Ranch Projects at issue in <u>Bolden</u>, <u>Mota</u>, <u>Frick</u>, and <u>Hubaard</u>,

2  even if each of those Projects extended into multiple policy years.

3      67.  VAN DAELE has therefore been injured by STEADFAST'S failure and

4  refusal to provide the coverage set forth herein that includes the mutual agreement of

5  the Parties that the aggregate SIR of $500,000 was the maximum limit VAN DAELE

6  would be required to pay under the STEADFAST POLICIES per Project even if the

7  Projects extended into multiple policy years.

8      68.  VAN DAELE's damages are in excess of the $75,000 jurisdictional

9  requirements of this Court, in an amount to be determined according to proof at time

10  of trial.

11  **FOURTH CLAIM**

12  **Declaratory Relief**

13  (As to STEADFAST)

14      69.  VAN DAELE repeats, re-alleges and incorporates by this reference each

15  and all of the allegations contained in this Complaint.

16      70.  As set forth above, STEADFAST, among other things, promised VAN

17  DAELE that the SIR required of VAN DAELE under the STEADFAST POLICIES

18  would be one aggregate of $500,000 as the maximum limit Van Deale would be

19  required to pay per Project even if completion of the Project extended into multiple

20  years.

21      71.  As a result of STEADFAST's conduct, VAN DAELE has incurred and

22  will further incur attorneys' fees and costs, experts' fees and costs, investigation costs,

23  and other costs and expenses for the <u>Bolden</u>, <u>Mota</u>, <u>Frick</u>, and <u>Hubbard</u> Projects

24  because of losses falling within the coverage of, and/or as defined in the

25  STEADFAST POLICIES referred to hereinabove.

26      72.  VAN DAELE provided timely notice of all claims in the Underlying

27  Actions to STEADFAST and VAN DAELE has made timely requests for

28  reimbursement of monies it paid based on attorney's fees, costs, indemnity,

investigative costs, repair work, replacement and tasks unrelated to normal customer service costs and expenditures over the one aggregate SIR of $500,000.   VAN DAELE has performed each covenant and/or condition which on its part must be performed in order to obtain the coverage referenced hereinabove, or has been excused from so performing as a result of STEADFAST's breach of its insurance agreement, including refusal to defend, indemnify, and/or reimburse VAN DAELE.

73. A dispute has arisen between VAN DAELE and STEADFAST in that VAN DAELE contends it is entitled to reimbursement from STEADFAST for monies paid in excess of the SIR's satisfied by VAN DAELE for the Bolden and Mota Projects, which STEADFAST has improperly refused to provide.   VAN DAELE is informed and believes and thereon alleges that STEADFAST unreasonably contends otherwise.

74. An actual controversy exists between VAN DAELE and STEADFAST regarding the scope of STEADFAST's duties under the STEADFAST POLICIES to reimburse  VAN DAELE for the excess monies paid over the SIR obligations under the STEADFAST POLICIES for the Bolden and Mota Projects.  VAN DAELE seeks a judicial declaration that, STEADFAST owes a duty to reimburse VAN DAELE in connection with the satisfaction of the SIR's under the STEADFAST POLICIES pertaining to the Bolden and Mota Actions.

75. As a direct and proximate result of the breaches described herein, VAN DAELE has been damaged in an amount to be proven at time of trial.

76. A judicial declaration is necessary and appropriate at this time to determine the respective rights and duties of the parties involved.

## FIFTH CLAIM

### Professional Negligence

(Against LOCKTON)

77. VAN DAELE repeats, re-alleges and incorporates by this reference each and all of the allegations contained in this Complaint.

78. LOCKTON has been VAN DAELE'S broker since approximately 2002. At all material times, VAN DAELE relied on LOCKTON to procure insurance that met VAN DAELE'S insurance needs and to make sure the policies issued were consistent with VAN DAELE'S business objectives.

79. As VAN DAELE's Broker LOCKTON has a duty to understand and ascertain the insurance needs and requirements of their client. VAN DAELE advised LOCKTON that VAN DAELE required insurance where all the homes in a given project, based on geographic location, would be subject to one SIR regardless of how many homes were involved in the Project and regardless of the years it takes to close escrow on the homes in that Project.  LOCKTON had a further duty to review the policies, understand the policies, and advise VAN DAELE of the material terms involving the SIR and its application.

80. LOCKTON represented to VAN DAELE that LOCKTON was granted written authority from STEADFAST to bind coverage.

81. LOCKTON represented to VAN DAELE that the HBPP Program was suitable and satisfied VAN DAELE's insurance requirements and business objectives, and that the SIR would not exceed $500,000 for a single project as long as VAN DAELE renewed the POLICIES with STEADFAST.

82. LOCKTON negotiated the terms of the POLICIES with STEADFAST on behalf of VAN DAELE and, at all material times, VAN DAELE relied on the expertise of LOCKTON.

83. As VAN DAELE's Broker, LOCKTON had a duty to accurately advise VAN DAELE of all the material terms and conditions of the policy of insurance placed on behalf of VAN DAELE.  LOCKTON had a duty upon receipt of the policy to review each policy to ensure each policy complied with the insurance requirements of the client, including, but not limited to, the requirement that all homes in a given project would be subject to a maximum SIR of $500,000 regardless the number of homes constructed in the Project, regardless of the number of claims made relating to

1   that project, and regardless of the years it took to close escrow on the homes in that

2   Project.

3       84.   LOCKTON had a duty to accurately advise VAN DAELE if the terms of

4   the STEADFAST POLICY did not comport with the VAN DAELE's requirements or

5   LOCKTON's representations of the coverage available and the terms of coverage

6   under the policy.

7       85.   LOCKTON advised VAN DAELE that the STEADFAST POLICIES

8   complied with VAN DAELE'S insurance requirements and business objectives

9   regarding the SIR.

10       86.   LOCKTON advised Mr. Michael Hopson of STEADFAST to limit the SIR

11   to one SIR.

12       87.   LOCKTON assured VAN DAELE that there would not be separate SIR's

13   on a given Project.   LOCKTON advised VAN DAELE that the use of separate LLC's

14   in order to generate capital to finance developments would not be used by

15   STEADFAST as a basis for triggering multiple SIR'S.

16       88.   LOCKTON expressed their understanding and agreement with VAN

17   DAELE that SIR's under the STEADFAST POLICIES would be based on the

18   geographic location of neighborhoods and agreed on the factors that would constitute

19   a project and imposition of a single SIR.

20       89.   VAN DAELE was specifically told by LOCKTON that STEADFAST

21   agreed that homes built in the same geographic area by substantially the same set of

22   trade contractors under a similar set of plans would be treated as one project and a

23   single "occurrence" and SIR aggregate.

24       90.   VAN DAELE relied upon LOCKTON'S representations that the

25   STEADFAST POLICIES complied with VAN DAELE'S Insurance requirements

26   regarding the SIR.

27       91.   LOCKTON breached its respective duties to VAN DAELE by failing to

28   advise VAN DAELE that STEADFAST did not agree to apply one SIR to a Project

1  like Eastvale or Lincoln Ranch if the Project closed escrow over several years, despite

2  LOCKTON'S representations to the contrary.

3       92.   LOCKTON'S breaches were a direct, proximate and substantial cause of

4  harm to VAN DAELE in that LOCKTON now claims multiple SIR's apply in the

5  <u>Bolden</u> matter for the Eastvale Project and multiple SIR's apply in <u>Mota</u> for the

6  Lincoln Ranch Project.

7       93.   The conduct of LOCKTON, and each of them, was a substantial factor in

8  causing harm to VAN DAELE.   As a result, VAN DAELE has suffered damages,

9  including but not limited to, the costs and expenses incurred toward the <u>Bolden</u> matter

10 in excess of the SIR and the costs and expenses incurred toward the <u>Mota</u> matter in

11 excess of the `SIR.   VAN DAELE will be further damaged to the extent it does not

12 have the liability coverage necessary to defend and/or indemnify itself with reference

13 to the <u>Mota</u> matter, which is ongoing, plus other damages, the nature and sum of

14 which will be fully ascertained and proven at time of trial.

15      94.   WHEREFORE, VAN DAELE prays for judgment against each and all of

16 the Defendants as follows:

17                    **ON THE FIRST CLAIM OF ACTION**

18      1.   For compensatory damages according to proof;

19                   **ON THE SECOND CLAIM OF ACTION**

20      2.   For compensatory damages according to proof;

21      3.   For attorney's fees and costs of suit in obtaining the benefits owed under

22 the Policy, pursuant to <u>Brandt v. Superior Court</u>, (1988) 37 Cal.3d 813 , according to

23 proof;

24      4.   For punitive damages according to proof;

25                        **ON THE THIRD CLAIM**

26      5.   For an order reforming the STEADFAST POLICIES issued to VAN

27 DAELE that the aggregate SIR of $500,000 was the maximum limit VAN DAELE

28 ///

1   would be required to pay under the STEADFAST POLICIES per Project even if the

2   Project extends into multiple policy years;

3                          **ON THE FOURTH CLAIM**

4        6.     For declaratory judgment STEADFAST must fully reimburse VAN

5   DAELE for monies paid in excess of the satisfied total aggregate SIR of $500,000

6   under the STEADFAST POLICIES;

7                           **ON THE FIFTH CLAIM**

8        7.     For compensatory damages, according to proof, against the Defendants

9               sued in said cause of action, in excess of the minimum jurisdiction of this

10              Court;

11                       **ON ALL CAUSES OF ACTION**

12       8.     For costs of suit herein;

13       9.     For prejudgment interest; and

14       10.    For all such other and further relief as the Court may deem just and

15   proper.

16   DATED: August 3, 2012            OLIVA & ASSOCIATES, ALC

17

18                                   By: _____

19                                   Joseph L. Oliva, Esq.
                                     Stephen F. Yurcich Esq.
20                                   Attorneys for Plaintiffs,
                                     VAN DAELE DEVELOPMENT
21                                   CORPORATION; VAN DAELE
                                     COMMUNITIES, LLC; NORTH CORONA
22                                   119/AF XXXII, LLC; NORTH CORONA
                                     120/AF XXXI, LLC; NORTH CORONA
23                                   417,  LLC; NORTH VALLEY 73, LLC;
                                     NORTH VALLEY 95, LLC; LINCOLN
24                                   RANCH 249/AF XXXIII, LLC; MURRIETA
                                     230, LLC; and MURRIETA FIELDS 96,
25                                   LLC.

26

27

28

                                       24

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial as provided by Rule 38(a) of the Federal Rule of Civil Procedure.

DATED: August 3, 2012

OLIVA & ASSOCIATES, ALC

By: _____

Joseph L. Oliva, Esq.
Stephen F. Yurcich Esq.
Attorneys for Plaintiffs,
VAN DAELE DEVELOPMENT
CORPORATION; VAN DAELE
COMMUNITIES, LLC; NORTH CORONA
119/AF XXXII, LLC; NORTH CORONA
120/AF XXXI, LLC; NORTH CORONA
417,  LLC; NORTH VALLEY 73, LLC;
NORTH VALLEY 95, LLC; LINCOLN
RANCH 249/AF XXXIII, LLC and
MURRIETA 230, LLC;  MURRIETA
FIELDS 96, LLC.

COMPLAINT

# **TABLE OF EXHIBITS**

| EXHIBIT | PAGE(S) |
|---------|---------|
| A | 26-100 |
| B | 101 |
| C | 102-151 |
| D | 152-188 |

# EXHIBIT A

# STEADFAST INSURANCE COMPANY
### Dover, Delaware
Administrative Offices – 1400 American Lane, Schaumburg, Illinois 60196-1056

## HOME BUILDERS PROTECTIVE INSURANCE POLICY

### DECLARATIONS

Policy number:   HBP 3696726-00

Item 1.   Named Insured and Mailing Address
VAN DAELE HOMES
PER NAMED INSURED ENDORSEMENT
2900 ADAMS ST STE C-25
RIVERSIDE, CA  92504-4378

Renewal of:   NEW

Producer and Mailing Address
LOCKTON COMPANIES
19800 MACARTHUR BLVD.
STE. 550
IRVINE, CA  92612
Producer Code:   75-428-000

The named insured is :   ☐ Individual   ☐ Partnership   ☒ Corporation
                         ☐ Other:

Item 2.   Policy Period:  From (effective date) 08-01-2002   To:  08-01-2003
          at 12:01 A.M. standard time at the above mailing address.

| Item 3. | Limits of Insurance | |
|---|---|---|
| General Aggregate Limit  - Coverage A & B | | $ | 10,000,000 |
| (Other than Products - Completed Operations/Construction Occurrence) | | $ | 15,000,000 |
| Products - Completed Operations Aggregate Limit | | $ | 1,000,000 |
| Personal and Advertising Injury Limit | | $ | 5,000,000 |
| Each Occurrence Limit | | $ | 100,000 |
| Damage to Premises Rented to You | Any One Fire | | |
| Each Home - Repair Cost   - Coverage C | The lessor of the sales price of each home or $2,500,000 (any one foundation) | | |
| Each Construction Occurrence Limit - Coverage D | | $ | 5,000,000 |
| Fungus Medical Expense Coverage - Coverage E | Per Person | $ | 25,000 |

| Item 4. | | |
|---|---|---|
| Each Occurrence \ Construction Occurrence \ Offense | $ | 250,000 |
| Self Insured Retention aggregate - all occurrences | N/A | |
| Each Occurrence/Premises | | $50,000 |

Item 5.   Home Builders Warranty Service Organization:

**Professional Warranty Service Corp.**
**P O Box 800**
**Annandale, VA  22003-0800**
**Phone 1-800-850-2799**

Item 6.   Premiums
Estimated Policy Premium                                                $1,410,000
This amount is adjustable annually at audit at a rate e of ˙7.05 per $1000 of revenue.
                The premiums does not include taxes or surcharges.
Countersigned this 23rd of Oct. 2002        Authorized representative: _Michael J Hynn_

STF-GL-D 620A

### EXHIBIT A, PAGE 26



# Home builders protective insurance policy endorsement

Steadfast Insurance Company
Dover, Delaware
Administrative Offices - 1400 American Lane, Schaumburg, Illinois  60196-1056

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer Code | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| HBP 3696726-00 | 08-01-2002 | 08-01-2003 | 08-01-2002 | 75-428-000 | -0- | -0- |

NAMED INSURED:  VAN DAELE HOMES
ADDRESS:      2900 ADAMS STREET, SUITE C-25, RIVERSIDE, CA  92504-4378

### Endorsement

| This endorsement modifies insurance provided by the following: |
|---|
| Home Builders Protective Insurance Policy Form |

### NAMED INSURED SCHEDULE

VAN DAELE DEVELOPMENT CORP.
LA SIERRA/ARLINGTON, LTD.
COTTONWOOD-CANYON CREST, LTD.
ORANGECREST COLE, LTD.
SUNNYMEAD SPRINGS, LTD.
LINCOLN GARDENS, LTD.
MORNING RIDGE APARTMENTS, LTD.
PERRIS 125 LTD.
BEACH SERVICE CORP.
LAS BRISAS HOMES, LTD.
CORPORATE INVESTMENT COMPANY
THE VAN DAELE FAMILY TRUST
ELSINORE-BUNDY CANYON, LTD.
VAN DAELE RANCHO 126 LTD.
VAN DAELE ORANGECREST COLLECTION, LTD.
VAN DAELE SUMMIT SERIES, LTD.
VAN DAELE/FIELDSTONE RIVERSIDE PARTNERS
MORNING HILLS II LTD.
VAN DAELE VICTORVILLE 157 LP
LEGACY SERIES II, LTD.
SUMMIT SERIES II, LTD., A CALIFORNIA LTD. PARTNERSHIP
LEGACY SERIES III, LTD.
CORONA HOMES, LTD.
LEGACY SERIES IV, LTD.
SPRUCE APARTMENTS, LTD.
PLACENTIA/VAN DAELE LTD., A CALIFORNIA LTD. PARTNERSHIP
CHINO HOMES II, LTD.

Countersigned this ____ of _____, _____ Authorized Representative_____

EXHIBIT A, PAGE 27

STF-GL-113-A-CW  01 (1/97)
Page 1 of 3


**ZURICH**

# Home builders protective insurance policy endorsement
### Steadfast Insurance Company
#### Dover, Delaware
#### Administrative Offices - 1400 American Lane, Schaumburg, Illinois 60196-1056

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer Code | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| HBP 3696726-00 | 08-01-2002 | 08-01-2003 | 08-01-2002 | 75-428-000 | -0- | -0- |

NAMED INSURED:  VAN DAELE HOMES
ADDRESS:       2900 ADAMS STREET, SUITE C-25, RIVERSIDE, CA  92504-4378

### Endorsement

| This endorsement modifies insurance provided by the following:<br>Home Builders Protective Insurance Policy Form |
|---|

### NAMED INSURED SCHEDULE
### (CONTINUED)

CHINO HOMES III, LTD., A CALIFORNIA LTD. PARTNERSHIP
VAN DAELE/ONTARIO LTD.
VAN DAELE/CHINO HILLS, LTD.
CORONA HOMES 77, LTD.
VAN DAELE/ORANGE LTD.
VAN DAELE 79 VENTURE
VAN DAELE/HUNTER'S RIDGE, LTD.
VAN DAELE-PLACENTIA HOMES 90, LTD.
VAN DAELE-AZUSA, LTD.
VAN DAELE/CORONA ASSOCIATES I, L.P.
VAN DAELE/WRI ASSOCIATES, L.P.
CORONA 119/AF VI, LTD., A CALIFORNIA LIMITED PARTNERSHIP
TEMECULA HOMES 90, LTD.
ONTARIO 150/AF VII, LTD.
VAN DAELE/CORONA ASSOCIATES II, L.P.
FALCON RIDGE II, LTD.
VAN DAELE/CHINO HILLS
CORONA 81/AF VIII, LTD.
TEMECULA 55/AF IX, LTD.
REDHAWK 69/AF XII, LTD.
VAN DAELE/SYCAMORE HIGHLANDS 81, LTD.
MURRIETA 302/AF XIII, LTD.
PATRICK AND ROBIN VAN DAELE FAMILY TRUST
BREA 89/AF XI, LTD.
FULLERTON 104/AF X, LTD.
WOODRIDGE RENTAL COMPANY
HUNTER'S RIDGE 51 LTD.

Countersigned this ____ of _____, _____ Authorized Representative_____



**ZURICH**

# Home builders protective insurance policy endorsement
### Steadfast Insurance Company
### Dover, Delaware
### Administrative Offices - 1400 American Lane, Schaumburg, Illinois  60196-1056

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of  End. | Producer Code | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| HBP 3696726-00 | 08-01-2002 | 08-01-2003 | 08-01-2002 | 75-428-000 | -0- | -0- |

NAMED INSURED:  VAN DAELE HOMES
ADDRESS:        2900 ADAMS STREET, SUITE C-25, RIVERSIDE, CA  92504-4378

### Endorsement

| This endorsement modifies insurance provided by the following: |
|---|
| Home Builders Protective Insurance Policy Form |

### NAMED INSURED SCHEDULE
### (CONTINUED)

TEMECULA 344/AF XV, LTD.
CORONA 132/AF XVI, LTD.
ONTARIO 120/AF XIV LTD.
MURRIETA 183/VDDC, LTD.
MURRIETA 115/AF XVII, LTD.
SPRUCE II/VDDC, LTD.
VICTORIA GROVE 51/AF XVIII, LTD.
CORONA 88/AF XIX, LTD.
RIVERSIDE 143/AF XX, LTD.
ONTARIO 75/AF XXI, LTD.
VD/SYCAMORE HIGHLANDS 59/AF XXII, LTD.
UPLAND 42/AF XXIII, LTD.
MURRIETA 64/AF XXIV LTD.
LA SIERRA 127/AF XXVII, L.L.C.
VAN DAELE COMMUNITIES, L.L.C.
BREA 89/AF XI, L.L.C.
FRENCH VALLEY 156/AF XXVII, L.L.C.
CUCAMONGA RIDGE 159/AF XXV, L.L.C.
MICHAEL B. VAN DAELE AND LINDA J. VAN DAELE, INDIVIDUALLY
AS THEIR INTERESTS MAY APPEAR
PATRICK J. VAN DAELE AND ROBIN L. VAN DAELE, INDIVIDUALLY
AS THEIR INTERESTS MAY APPEAR
VD/FULLERTON 91/AF X L.L.C.
MURRIETA 172/AF XXIX, L.L.C.
NORTH CORONA 120/AF XXXI, L.L.C.
MURRIETA 230, L.L.C.

Countersigned this _____ of _____, _____  Authorized Representative_____



# Home builders protective insurance policy

## Service of suit

In the event of our failure to pay any amount to be due under this policy, at your request, we will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this condition constitutes or should be understood to constitute a waiver of our right to commence an action in any court of competent jurisdiction in the United States to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or any state in the United States. It is agreed that service of process in such suit may be made upon our General Counsel, Law Department, Steadfast Insurance Company, 1400 American Lane, Schaumburg, Illinois 60196-1056, or his or her representative, and we will abide by the final decision of such court or of any appellate court in the event of an appeal of any suit initiated against us under this policy.

If any statute of any state, territory or district of the United States requires service of process be made upon an officer of the state, we designate the Superintendent, Commissioner, or Director of Insurance, or other officer specified for this purpose in the statute, as our true and lawful attorney whom may be served any lawful process instituted by you or on your behalf, or any beneficiary, arising out of this policy. We designate our General Counsel as the person to whom the officer is authorized to mail such process.

## In witness clause

In return for the payment of premium, and subject to the terms of this policy, we agree to provide insurance as stated in this policy. This policy shall not be valid unless countersigned by our duly authorized representative.

In Witness Whereof, we have executed this policy, and, where required, have had it countersigned by our duly authorized representative.

**President**
**Steadfast Insurance Company**

**Corporate Secretary**
**Steadfast Insurance Company**

EXHIBIT A, PAGE 30



**ZURICH**

# Home builders protective insurance policy endorsement

Steadfast Insurance Company
Dover, Delaware
Administrative Offices - 1400 American Lane, Schaumburg, Illinois  60196-1056

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of  End. | Producer Code | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| HBP 3696726-00 | 08-01-2002 | 08-01-2003 | 08-01-2002 | 75-428-000 | -0- | -0- |

NAMED INSURED:  VAN DAELE HOMES
ADDRESS: 2900 ADAMS STREET, SUITE C-25, RIVERSIDE, CA 92504-4378

Endorsement

| This endorsement modifies insurance provided by the following: |
|---|
| Home Builders Protective Insurance Policy Form |

## SCHEDULE OF FORMS AND ENDORSEMENT

| | |
|---|---|
| HOME BUILDERS PROTECTIVE POLICY COVERAGE SHEET | STF GL 620 A |
| HOME BUILDERS PROTECTIVE INSURANCE POLICY DECLARATIONS | STF GL D620A |
| NAMED INSURED SCHEDULE | STF GL 113 A CW 01 |
| HOME BUILDERS PROTECTIVE POLICY IN WITNESS CLAUSE | STF GL 620 A |
| HOME BUILDERS PROTECTIVE INSURANCE POLICY FORM | STF GL 620 A |
| SCHEDULE OF FORMS AND ENDORSEMENTS | STF GL 113 A CW |
| HOME BUILDERS PROTECTIVE LIMITED FUNGUS EXCLUSION | STF GL 113 A CW 02 |
| DEDUCTIBLE ENDORSEMENT  - OCCURRENCE | STF GL 113 A CW 03 |
| BLANKET WAIVER OF SUBROGATION | STF GL 113 A CW 04 |
| BLANKET ADDITIONAL INSURED | STF GL 113 A CW 05 |
| CANCELLATION CONDITIONS AMENDMENT | STF GL 113 A CW 06 |
| BROAD FORM NAMED INSURED | STF GL 113 A CW 07 |

EXHIBIT A, PAGE 31

STF-GL-113-A-CW (1/97)

# HOME BUILDERS PROTECTIVE INSURANCE POLICY

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section VI – Definitions.

## SECTION I – COVERAGES

### COVERAGE A: BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits of Insurance; and
(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under **Coverages A, B** or **D**, and "repair costs" under **Coverage C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under **Supplementary Payments – Coverages A, B C and D**.

b. This insurance applies to "bodily injury" or "property damage" only if:
(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and
(2) The "bodily injury" or "property damage" occurs during the policy period.

c. Damages because of "bodily injury" include damages claimed by any person or

organization for care, loss of services or death resulting at any time from the "bodily injury".

**2. Exclusions**

In addition to **Common Exclusions** applying to **Coverages A & D**, the following exclusions apply:

This insurance does not apply to:

a. **Contractual Liability**
"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or
(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.

b. **Liquor Liability**
"Bodily injury" or "property damage" for which any insured may be held liable by reason of:
(1) Causing or contributing to the intoxication of any person;
(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or
(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

c. **Workers' Compensation and Similar Law**
Any obligation of the insured under a workers' compensation, disability benefits or

unemployment compensatic.. law or any similar law.

d. **Employer's Liability**
"Bodily injury" to:
(1) An "employee" of the insured arising out of and in the course of:
(a) Employment by the insured; or
(b) Performing duties relating to the conduct of the insured's business; or
(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies:
(1) Whether the insured may be liable as an employer or in any other capacity; and
(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

e. **Aircraft, Auto or Watercraft**
"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion does not apply to:
(1) A watercraft while ashore on premises you own or rent;
(2) A watercraft you do not own that is:
(a) Less that 26 feet long; and
(b) Not being used to carry persons or property for a charge;
(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" in not owned or rented or loaned to you or the insured;
(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or
(5) "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in Paragraph g.(2) or g.(3) of the definition of "mobile equipment".

f. **Mobile Equipment**
"Bodily injury" or "property damage" arising out of:

(1) The tra...sportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or
(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

g. **Damage to Property**
"Property damage" to:
(1) Property you own, rent or occupy;
(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;
(3) Property loaned to you;
(4) Personal property in the care, custody or control of the insured;
(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations;
(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs (1), (3) and (4) of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven (7) or fewer consecutive days. A separate limit of insurance applies to Damage to Premises Rented to You as described in Section III – Limits of Insurance.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

h. **Damage to Your Product**
"Property damage" to "your product" arising out of it or any part of it.

i. **Damage to Your Work**
"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

j. **Damage to Impaired Property or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work" or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

k. **Personal and Advertising Injury**
"Bodily injury" arising out of "personal and advertising injury".

l. **Employment Related Practices**
"Bodily injury" to:
(1) A person arising out of any:
    (a) Refusal to employ that person;
    (b) Termination of that person's employment; or
    (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at the person; or
(2) The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in paragraphs (a), (b) or (c) above is directed.
This exclusion applies:
    (a) Whether the insured may be liable as an employer or in any other capacity; and
    (b) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

Exclusions **b.** through **j.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III – Limits of Insurance.

## COVERAGE B: PERSONAL AND ADVERTISING INJURY LIABILITY

1. **Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under **Coverages A** or **B** or **D** and "repair costs" under **Coverage C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A, B, C** and **D.**

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

2. **Exclusions**

This insurance does not apply to:

a. "Personal and advertising injury"

(1) Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";

(2) Arising out of any publication in any media, if done by or at the direction of the insured with knowledge of its falsity;

(3) Arising out of any publication in any media of material whose first publication took place before the beginning of the policy period;

(4) Arising out of a criminal act committed by or at the direction of any insured;

EXHIBIT A, PAGE 34

(5) For which the insured has assumed the liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement;

(6) Arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement";

(7) Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement";

(8) Arising out of the wrong description of the price of goods, products or services stated in your "advertisement";

(9) Committed by an insured whose business is advertising, broadcasting, publishing or telecasting. However, this exclusion does not apply to Paragraphs 18.a., b. and c. of "personal and advertising injury" in Section VI -Definitions; or

(10)   Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

b.  Any loss, cost or expense arising out of any:

(1) Request, demand, order or statutory or regulatory requirements that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants".

## COVERAGE C: HOME BUILDERS LIMITED WARRANTY

### 1.  Insuring Agreement

a.  We will pay those sums you are contractually obligated to pay as "repair costs" for "construction defects" under "Home Builders

Limited Warranty" agreements issued by you or on your behalf. We will have the right and duty to defend you against any "suit" seeking those "repair costs". However, we will have no duty to defend you against any "suit" seeking "repair costs" for " construction defects" to which this insurance does not apply. We may, at our discretion, investigate any "construction defect" and settle or arbitrate any claim or "suit" that may result. But:

(1) The amount we will pay for "repair costs" is limited as described in Section III – Limits of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A, B or D and "repair costs" under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments- Coverages A, B, C and D.

b.  This insurance applies only to "repair costs" for "construction defects" only if the "repair costs":
(1) Are caused by a "construction occurrence"; and
(2) Arise from "Home Builders Limited Warranty" agreements on "homes" or "common elements" that you sell, trade, give away or otherwise transfer title to during the policy period.

### 2.  Exclusions

This insurance does not apply to:

a.  **Normal Customer Service Expenses**
Any "repair costs" for a "construction defect" which first arises within twelve (12) months of the first sale of a "home". However, this exclusion does not apply to "repair costs" incurred for a "construction defect" of a substantial nature, arising from:
1) A structural failure in the home;
2) The use of materials that are subsequently determined to be defective; or
3) A significant design flaw in the home.

b.  **Punch List Items**
"Construction defects" noted at the time of a homeowner walkthrough.

c. **Expected or Intended Construction Defect**
"Repair costs" arising from an expected or intended "construction defect" from the standpoint of the insured.

d. **Failing to Complete the Home**
Any "repair costs" as a result of your failure to complete the "home".

e. **Excluded Causes**
"Construction defect" that is excluded in the "HomeBuilders Limited Warranty" issued by you or on your behalf.

# COVERAGE D – CONSTRUCTION DAMAGE LIABILITY

1. **Insuring Agreement**

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "property damage" to or arising out of "your work". We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "construction occurrence" and settle any claim or "suit" that may result. But:

        1) The amount we will pay for damages is limited as described in Section III – Limits of Insurance; and

        2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A, B** or **D,** and "repair costs" under Coverage **C.**

    b. This insurance applies to "property damage" only if:
        1) The "property damage" is caused by a "construction occurrence" that takes place in the "coverage territory"; and
        2) The "property damage" is to or arises out of "your work" that you sell, give away or otherwise transfer title to during the policy period.

    c. No other obligations or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – **Coverages A, B, C** and **D.**

2. **Exclusions**

    This insurance does not apply to:

    a. **Normal Customer Service Expenses**
    Any expenses incurred by you for any customer care program you provide the homebuyers after the first sale of a "home".

    See **Common Exclusions - Coverages A & D.**

## COMMON EXCLUSIONS – COVERAGES A & D

This insurance does not apply to:

1. **Expected or Intended Injury**
"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

2. **Pollution**

    a. "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":
    (1) At or from any premises, site or location, which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:
        (a) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building;
        (b) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured;
        (c) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire"; or
        (d) premises that are "your work" and were never occupied, rented or held for rental by you;

(2) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(3) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

(4) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(a) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them.  This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(b) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes, vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(c) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(5) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, detoxify or neutralize, or in any other way

respond to, or assess the effects of "pollutants".

b. Any loss, cost or expense arising out of any:

(1) Request, demand, order or statutory or regulatory requirements that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**3. War**

"Bodily injury" or "property damage" due to war, whether or not declared or any act or condition incident to war.  War includes civil war, insurrection, rebellion or revolution.  This exclusion applies only to liability assumed under a contract or agreement.

**4. Recall of Products, Work or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

a. "Your product";

b. "Your work"; or

c. "Impaired property";

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**5. Asbestos**

"Bodily injury" or "property damage" caused by, or allegedly caused by asbestos either alone or in combination with other substances or factors.

As respects **Coverage A.** only, **Exclusions 2., 3.** **and 4.** above do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner.  A separate limit of insurance applies to Damage To

Premises Rented To You as described in Section III – Limits of Insurance.

## COVERAGE E: FUNGUS RELATED MEDICAL PAYMENTS

### 1. Insuring Agreement

a. We will pay medical expenses as described below for "bodily injury" caused by a "construction occurrence" because of "homes" or "common elements" you sell, gave away or otherwise transfer title to during the policy period provided that:

   (1) The "construction occurrence" resulted in the presence of a harmful "fungus" in the "home" or "common elements";

   (2) The expenses are reported to us within one year from the time when the expenses are incurred; and

   (3) The injured person submits to an examination, at our expense, by physicians of our choice as often as we reasonably request.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

   (1) First aid administered at the time of an "construction occurrence";

   (2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

   (3) Necessary ambulance, hospital, professional nursing and funeral services.

### 2. Exclusions:

We will not pay expenses for "bodily injury":

a. To any insured who qualifies as an insured under paragraph 1. of **SECTION II – WHO IS AN INSURED.**

b. To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c. To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or similar law.

d. To a person injured while taking part in athletics

e. Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion, revolution or terrorist act.

## SUPPLEMENTARY PAYMENTS – COVERAGES A, B, C AND D

We will pay, with respect to any claim we investigate or settle, any "suit" against you or any insured we defend or "Request for Warranty Performance" we respond to:

1. All expenses we incur.

2. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

3. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

4. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claims or "suit" including actual loss of earnings up to $250 a day because of time off from work.

5. All costs taxed against the insured in the "suit".

6. Prejudgment interest awarded against the insured on that part of the judgement we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

7. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

## SECTION II – WHO IS AN INSURED

1. If you are designated in the Declarations as:

   a. An Individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

HBPP 06/02

b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers and directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

2. Each of the following is also an insured:

a. Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" is an insured for:

(1) "Bodily injury" or "personal and advertising injury" :

(a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business;

(b) To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of Paragraph (1)(a) above;

(c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs (1)(a) or (b) above; or

(d) Arising out of his or her providing or failing to provide professional health care services.

(2) "Property damage" to property:

(a) Owned, occupied or used by,

(b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

b. Any person (other that your "employee"), or any organization while acting as your real estate manager.

c. Any person or organization having proper temporary custody of your property if you die, but only:

(1) With respect to liability arising out of the maintenance or use of the property; and

(2) Until your legal representative has been appointed.

d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

a. "Bodily injury" to a co-"employee" of the person driving the equipment; or

b. "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

4. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization: However:

a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b. Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed that organization;

c. Coverage **B** does not apply to "personal and advertising injury" arising out of an offence committed before you acquired or formed the organization; and

d. Coverage **C** does not apply to "repair costs" arising out of "construction defect" in "homes" sold, given away or abandoned before you acquired or formed that organization.

e. Coverage **D** does not apply to "property damage" to "your work" that occurred before you acquired or formed that organization.

5. Any person or organization that you have agreed by contract or agreement to add as an insured under this coverage part is an insured. However:

a. Coverage under this provision is limited to liability arising out of your ongoing operations and "your work;

b. Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you entered in that contract or agreement;

c. Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you entered into that contract or agreement;

d. Coverage **C** does not apply to "repair cost":

(1) For "construction defect" resulting from work or operations performed on your behalf by the person or organization you have agreed by contract or agreement to add as an insured.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture, or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

1. The Limits of insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of :

a. Insureds;

b. Claims made or "suits" brought; or

c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

a. Damages under Coverage **A**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

b. Damages under Coverage **B**.

3. The Products-Completed Operations Aggregate Limit is the most we will pay for the sum of:

a. Medical expenses under Coverage **E**;

b. Damages under Coverage **A** because of "bodily injury" and "property damage" included in the "products-completed operations hazard";

c. "Repair costs" under Coverage **C** because of "construction defects" included in the "products-completed operations hazard"; and

d. Damages under Coverage **D** because of "property damage" to "your work". This policy limit will apply to all such "construction occurrence" damages, regardless of when the damages become known.

4. Subject to **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to **2.** or **3.** above, whichever applies, the Each Occurrence/Construction Occurrence Limit is the most we will pay for damages under:

a. Coverage **A** because of all "bodily injury" and "property damage" arising out of any one "occurrence";

b. Coverage **C** because of all "repair costs arising out of any one "construction occurrence"; and

c. Coverage **D** because of "property damage" arising out of any one "construction occurrence".

6. Subject to **2.** above, the Damage to Premises Rented to You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with the permission of the owner.

7. Subject to **3.** Above, the Fungus Medical Expense Limit is the most we will pay under Coverage **E** for all medical expense because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – SELF INSURED RETENTION

1. Our obligations under SECTION I – **COVERAGES** to pay damages or "repair costs" applies only to the amounts of damage or "repair costs" in excess of any "Self Insured Retention" amounts stated in the Declarations.

2. Should you refuse to respond to:

   a. Any claim or "suit" for damages under **Coverages A, B, D,** or **E** the insurance provided by this policy will not replace the "Self Insured Retention" provided by you; or

   b. Any "repair costs" for "construction defects" to which policy applies, we will do so, but you shall reimburse "us" for the amounts we pay up to the applicable "Self Insured Retention" amount.

3. "Self Insured Retention" Amounts

   a. The Each Occurrence amount shown in the Declarations is the most you will pay for all "self insured retention" amounts arising out of one "occurrence", offense or "construction occurrence" or any single loss involving any combination of "occurrence", offense and "construction occurrence".

   b. The Self-Insured Retention Aggregate is the most you will pay for all "self insured retention"

amounts under this policy. If no value is shown, then the "self insured retention" aggregate shall be unlimited.

The "Self Insured Retention" amounts of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last proceeding period for purposes of determining the "Self Insured Retention" aggregate if any.

3. Settlement of Claim, "Suit" or "Repair Costs"

   a. Any amount necessary to settle any claim, "suit" or "repair costs" exceeding the "Self Insured Retention" may not be agreed to without our written permission.

   b. We may defend and pay any claim, "suit" or "repair cost" that may exceed any of the applicable "Self Insured Retention" amounts shown in the declarations. You will reimburse "us" promptly for the amounts we pay within the applicable "Self Insured Retention".

## SECTION V – HOME BUILDERS PROTECTIVE CONDITIONS

1. **Common Policy Conditions**
   All coverage parts included in this policy are subject to the following conditions.

   a. **Bankruptcy**
   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this policy.

   b. **Changes**
   This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made part of this policy.

   c. **Examination of Your Books and Records**
   We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

   d. **Inspections and Surveys**

(1) We have the right to:
  (a) Make inspections and surveys at any time;
  (b) Give you reports on the conditions we find; and
  (c) Recommend changes.
(2) We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:
  (a) Are safe or healthful; or
  (b) Comply with laws, regulations, codes or standards.
(3) Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.
(4) Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

e.  **Premiums**
The first Named Insured shown in the Declarations:
1) Is responsible for the payment of all premiums, deductible amounts or "Self Insured Retention"; and
2) Will be the payee for any return premiums we pay.

f.  **Legal Action Against Us**
No person or organization has a right under this policy:
(1) To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or
(2) To sue us on this policy unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

g.  **Transfer of Rights and Duties**
Your rights, duties and interests under this policy cannot be transferred or assigned without our advance written consent.

h.  **Premium Audit**
(1) We will compute all premiums for this policy in accordance with our rules and rates.
(2) Premium shown in this policy as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.
(3) The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

i.  **Representations**
By accepting this policy, you agree:
(1) The statements in the Declarations are accurate and complete;
(2) Those statements are based upon representations you have made to us; and
(3) We have issued this policy in reliance upon your representations.
(4) You will not directly procure insurance for all or any part of the "self insured retention" amounts shown in the Declarations.

j.  **Separation of Insureds**
Except with respect to the Limits of Insurance, and any rights and duties specifically assigned in this policy to the first Named Insured, this insurance applies:
(1) As if each Named Insured were the only Named Insured; and
(2) Separately to each insured against whom claim is made or "suit" is brought.

k.  **Transfer of Rights of Recovery Against Others to Us**
If the insured has right to recover all or part of any payment we have made under this policy, those rights are transferred to us. The insured must do nothing after a loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

HBPP 06/02

**l.  When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**m.  Cancellation**

(1) You may cancel this policy by delivering or mailing to "us" either the policy or a written notice stating when the cancellation shall be effective.

(2) After the 90th day this policy has been in effect, we may only cancel this policy for nonpayment of:

(a) Premiums;

(b) Audit premiums from prior policy periods; or

(c) Amounts due us under the Self Insured Retention shown on the Declarations.

We will cancel this policy by delivering or mailing to you at the address shown in the Declarations a written notice of cancellation not less than 15 days before the effective date of the cancellation.

**n.  Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A, B, C or D of this policy; our obligations are limited as follows:

(1) **Primary Insurance**

This insurance is primary except when (2) below applies.  If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary.  Then, we will share with all that other insurance by the method described in (3) below.

(2) **Excess Insurance**

This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis:

(a) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(b) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(c) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented

to you or temporarily occupied by you with permission of the owner; or

(d) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section I – Coverage **A** – Bodily Injury and Property Damage.

(e) Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverages **A, B, C** or **D** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit".  If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of loss, if any, that exceeds the sum of:

(a) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(b) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this policy.

(3) **Method of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also.  Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits.  Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**2.  Conditions that apply only to Coverages A , B and D**

a. **Duties in the Event of Occurrence, Construction Occurrence, Offense, Claim or Suit- Coverages A ,B and D**
   (1) You must see to it that we are notified as soon as practicable of an "occurrence", "construction occurrence" or an offense which may result in a claim.  To the extent possible, notice should include:
      (a) How, when and where the "occurrence, "construction occurrence" or offense took place;
      (b) The names and addresses of any injured persons and witnesses; and
      (c) The nature and location of any injury or damage arising out of the "occurrence", "construction occurrence" or offense.

   However, knowledge of an "occurrence", "construction occurrence", claim, "suit" or offense by an agent, employee, or servant of any insured; and receipt of any demand, notice, summons, or other legal paper in connection with a claim or "suit" by any agent, employee, or servant of any insured shall not in itself constitute knowledge of the insured or receipt by the insured unless an individual described below shall have actual knowledge or shall have received such demand, notice, summons, or other legal paper from the agent, employee or servant:
      (a) Any individual named in the Declarations
      (b) Risk Manager or person in similar position of an Insured;
      (c) Your General Counsel or law department;
      (d) All "Executive Officers" of an Insured; or
      (e) Partners or Members of any partnership, joint venture or limited liability company named in the Declarations.
   (2) If a claim is made or "suit" is brought against any insured, you must:
      (a) Immediately record the specifics of the claim or "suit" and the date received; and
      (b) Notify us as soon as practicable.

   We have no duties under this policy until the notice is received.  You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   (3) You and any other involved insured must:
      (a) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

      (b) Authorize us to obtain records and other information;
      (c) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and
      (d) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.
   (4) No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3. **Conditions specific to Coverage C– Home Builders Warranty**
   a. **Notify us of Home Builders Warranty on Each Specific Home**
      You shall submit all required documents in a form specified by and to the designated warranty service company at the address shown in Item 5. in the Declarations.

   b. **Duties in the Event of a Request for Warranty Performance Relative to a Construction Defect**
      When you receive a "Request for Warranty Performance" from a "Homeowner" to which "Home Builder's Limited Warranty" was issued by you or on your behalf that is subject to this insurance, you shall:

      (1) Repair or otherwise resolve the "construction defect" if the "repair costs" are less than $10,000 a "home" without notifying "us"; or
      (2) Notify us if:
         (a) The "repair costs" are likely to exceed $10,000 any one "home" or 50% of the self insured retention shown in the Declarations before you repair the "construction defect; or
         (b) You decline to repair the "construction defect" for any reason.
      (3) Maintain such records and accounts to identify the costs you have incurred relating to the "repair costs" of the "construction defect".

   c. **Duties in the Event of Construction Defect – Notices Other Than Request for Warranty Performance**
      You must see to it that we are notified as soon as practicable of any demand, claim, request (other than a "Request for Warranty Performance"), summons, "suit" or proceedings

related to a "construction defect" to which "a "Home Builder's Limited Warranty" was issued by you or on your behalf.

## SECTION VI – DEFINITIONS

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters.

2. "Auto" means a land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

3. "Bodily Injury" means physical injury including resulting mental anguish, mental injury, shock and humiliation, or sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Common element" means the definition of "common element" as stated in the "Home Builder's Limited Warranty" issued by you or on your behalf to a homeowner.

5. "Construction occurrence" means:

   a. Under Coverage C, an event or happening including continuous or repeated exposure to substantially the same general harmful conditions; or
   b. Under Coverage D, an accident including continuous or repeated exposure to substantially the same general harmful conditions.
   c. Under Coverage E, an accident, event or happening including continuous or repeated exposure to substantially the same general harmful conditions.

   A "construction occurrence" involving substantially similar damages to "your work" within the same project, phase, subdivision, community, neighborhood or other similar local area and constructed under a common set of contract documents by substantially the same subcontractors will be considered a single "construction occurrence".

6. "Construction defect" means the definition of "construction defect" as stated in the "Home Builder's Limited Warranty" issued by you or on your behalf to a homeowner.

7. "Coverage territory" means:

   a. The United States of America (including its territories and possessions), Puerto Rico and Canada;
   b. International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in a. above; or
   c. All parts of the world if:
      (1) The injury or damage arises out of:
         (a) Goods or products made or sold by you in the territory described in a. above; or
         (b) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; and
      (2) The insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

8. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

9. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

10. "Fungus" means:
    a. any form or type of mold, mushroom or mildew;
    b. any other fungal structure; and
    c. any volatile organic compounds, mycotoxins, allergenic proteins or other substances or gases produced by or arising out of any mold, mushroom, mildew, fungal structure or "spores(s)".

11. "Home" means the definition of "home" as stated in the "Home Builder's Limited Warranty" issued by you or on your behalf to a homeowner.

12. "Home Builder's Limited Warranty" means the express limited warranty administered by the warranty service company that is shown in Item 5. on the Declarations and issued by you for a "home" or "common element" covered under this policy.

13. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

14. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or
b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

a. The repair, replacement, adjustment or removal of "your product" or "your work"; or
b. Your fulfilling the terms of the contract or agreement.

15. "Insured Contract" means:
a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";
b. A sidetrack agreement;
c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;
d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;
e. An elevator maintenance agreement;
f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph f. does not include that part of any contract or agreement:
(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;
(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:
(a) Preparing, approving, or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications;
(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;
or

(3) Under which the insured, if an architect, engineer, or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

16. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

17. "Loading or unloading" means the handling of property:
a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";
b. While it is in or on an aircraft, watercraft or "auto"; or
c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading and unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

18. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:
a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;
b. Vehicles maintained for use solely on or next to premises you own or rent;
c. Vehicles that travel on crawler treads;
d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:
(1) Power cranes, shovels, loaders, diggers or drills; or
(2) Road construction or resurfacing equipment such as graders, scrapers or rollers;
e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:
(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or
(2) Cherry pickers and similar devices used to raise and lower workers;
f. Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

g. However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":
(1) Equipment designed primarily for:
(a) Snow removal;
(b) Road maintenance, but not construction or resurfacing; or
(c) Street cleaning;
(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and
(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

19. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

20. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:
a. False arrest, detention or imprisonment;
b. Malicious prosecution;
c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
d. Any publication in any media, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
e. Any publication in any media, of material that violates a person's right to privacy;
f. The use of another's advertising idea in your "advertisement"; or
g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

21. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

22. "Products-completed operations hazard":
a. Includes all "bodily injury", "property damage", and "repair costs" occurring away from premises you own or rent and arising out of "your product" or "your work" except:
(1) Products that are still in your physical possession; or
(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.
(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.
(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b. Does not include "bodily injury" or "property damage" arising out of:
(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;
(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or
(3) Products or operations for which the classifications listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

23. "Property damage" means:
a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.
For purposes of Coverage D, only, property damage means:

Physical injury to tangible property that is "your work", including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it.

24. "Repair costs" means the cost to repair or replace or otherwise resolve a "construction defect". It includes all costs covered by the "Home Builder's Limited Warranty".

25. "Request for Warranty Performance" means a written notification to you from or on behalf of a homeowner requesting you to respond to an alleged "construction defect".

26. "Self Insured Retention" means the amount you or any insured must pay for:
   a. All amounts which you become legally obligated to pay as damages or "repair costs" as defined in this policy; and
   b. The legal expenses, expert and other witness expenses, court costs, bond premiums and such other usual and incidental expenses attendant to claim and litigation costs.

27. "Suit" means a civil proceeding in which damages to which this insurance applies are alleged. "Suit" includes:

   a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or
   b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submit or does submit with our consent.

28. "Structure" means a "home" supported by a single foundation.
As an example – eight (8) units of attached townhomes, each with separate foundations but containing common walls would be considered as eight (8) structures.

29. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short term workload conditions.

30. "Your product" means:
   a. Any goods or products, other than real property, manufactured, sold, handled, distribute or disposed of by:
      (1) You;
      (2) Others trading under your name; or
      (3) A person or organization whose business or assets you have acquired; and
   b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

   "Your product" includes:
   a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and
   b. The providing or failure to provide warnings or instructions.

   "Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

30. "Your work" means:
   a. Work or operations performed by you or on your behalf; and
   b. Materials, parts or equipment furnished in connection with such work or operations.

   "Your work" includes:
   a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and
   b. The providing or failure to provide warnings or instructions.

**THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY.**

## Homebuilders Protective Limited Fungus Exclusion

This endorsement modifies insurance provided under the following:

HOMEBUILDERS PROTECTIVE POLICY

This insurance does not apply to "bodily injury" under coverage **A** or "personal and advertising injury" under coverage **B** caused directly or indirectly, by:

1.  Any "fungus(i)" or "spore(s)", or

2.  Any substance, vapor or gas produced by or arising out of any "fungus(i)" or "spore(s)"


For the purposes of this endorsement, the following definitions are added:

"Fungus(i)" includes, but is not limited to:

1.  any form or type of mold, mushroom or mildew,

2.   any other fungal structure, and

3.  any volatile organic compounds, mycotoxins, allergenic proteins or other substances or gases produced by or arising out of any mold, mushroom, mildew, fungal structure or "spores(s)".

"Spore(s)" means any reproductive body produced by or arising out of any "fungus(i)".

EXHIBIT A, PAGE 49

STF-GL-113-A CW 02 (1/97)

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1993, 1996
Copyright 2001 Zurich American Insurance Company as to additional text and revisions.

# Deductible Endorsement



**ZURICH**

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| HBP 3696726-00 | 08/01/2002 | 08/01/2003 | 08/01/2002 | 75-428-000 | $ | $ |

Typed:    10/21/02

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## COMMERCIAL GENERAL LIABILITY
## DEDUCTIBLE ENDORSEMENT

This endorsement applies between you and us. You will reimburse us for deductible amounts that we pay on your behalf. This endorsement will remain in effect on renewals of this policy unless specifically not made a part of such or replaced by a similar endorsement.

This endorsement and its individual sections which include Deductible Amounts, How This *(These)* Deductible(s) Apply*(ies)*, Effect of Deductible(s) On Limits of Liability, Definitions and Conditions apply only with respect to the deductibles which are the subject of this endorsement.

### SCHEDULE

| | Coverage | | Deductible Amount/Basis | | |
|---|---|---|---|---|---|
| Coverage | A. | Bodily Injury and Property Damage Liability<br>All persons or organization | $ 250,000 | each | "occurrence" |
| Coverage | A. | Bodily Injury and Property Damage Liability<br>Any one person or organization | $ _____ | each | "claim" |
| Coverage | B. | Personal and Advertising Injury Liability<br>By "offense" – Any one person or organization | $ _____ | each | "claim" |
| Coverage | C. | Medical Payments | $ _____ | each | "accident" |
| Coverage | | Employee Benefits Liability<br>Any one person or organization | $ _____ | each | "claim" |
| Other Coverage by | | _____ | $ _____ | each | _____ |

### ALLOCATED LOSS ADJUSTMENT EXPENSE *('ALAE')*

Select one:

Option 1.    _____    As respects each "occurrence", each "claim" or each "accident" *(as applicable)*, all "ALAE" is reimbursed in addition to the Deductible Amount.

Option 2    _____    As respects each "occurrence", each "claim" or each "accident" *(as applicable)*, "ALAE" is reimbursed as follows:

EXHIBIT A, PAGE 50

(1)   If the total amount payable for other than "ALAE" for occurrences, claims or accidents is equal to or less than the Deductible Amount(s) or if there is no amount payable other than "ALAE," then all "ALAE" shall be reimbursed, or

(2)   If the total amount payable for other than "ALAE" exceeds the Deductible Amount(s), a prorata share of total "ALAE" based on the ratio of the deductible amount shown in the above schedule divided by the total amount payable for other than "ALAE" as respects each "occurrence", each "claim" or each "accident" is reimbursed.

|   |   |   |
|---|---|---|
| Option 3 | X _____ | As respects each "occurrence", each "claim" or each "accident" (as applicable), "ALAE" is reimbursed and included in the Deductible Amount. |

A.   How This (These) Deductible(s) Apply(ies):

You agree to reimburse us for each "occurrence", each "claim" or each "accident" up to the Deductible Amount shown in the Schedule above:

1.   All sums payable for other than "ALAE"; plus

2.   All "allocated loss adjustment expense" as respects each "occurrence", "claim" or "accident":

   a.   When you have elected Option 1 in the Schedule above, in addition to and not limited by the deductible amount, or

   b.   When you have elected Option 2 in the Schedule above, in addition to but not limited by the deductible amount if sums payable for other than "ALAE" are equal to or less than the deductible amount; or a prorata share of total "ALAE" if sums payable for other than "ALAE" exceed the deductible amount, or

   c.   When you have elected Option 3 in the Schedule above, as part of the deductible amount.

B.   Effect of Deductible(s) on Limits of Liability.

All sums payable for other than "ALAE" within the deductible amounts shall be included in determining the most we will pay as defined in Section III of the policy - Limits of Insurance and as stated in the Declarations and as are defined and stated in any endorsement(s) to this policy relating to Limits of Insurance.

C.   Definitions

1.   Each "Occurrence" means:

For any coverage described in the Schedule to which the each "occurrence" basis applies, to all sums payable for other than "ALAE" as the result of an accident, including continuous or repeated exposure to substantially the same harmful conditions, "regardless of the number of persons or organizations who sustain damages or to whom sums are payable because of that "occurrence".

2.   Each "Claim" means:

   a.   Other than Coverage B., for any coverage described in the Schedule to which the each "claim" basis applies, to all sums payable for other than "ALAE" to any one person as the result of an "occurrence". If damages are claimed for care, loss of services or death resulting at any time from bodily injury, a separate deductible amount applies to each person making a claim for such damages. With respect to property damage, any one person is also defined as any one organization.

   b.   For coverage B., to all damages sustained by any one person or organization as the result of an offense.

3.   Each "Accident" means:

EXHIBIT A, PAGE 51

For any coverage described in the Schedule to which the each "accident" basis applies, to all sums payable for other than "ALAE" as the result of an accident regardless of the number of persons who sustain medical expenses because of that "accident".

4.   "Allocated loss adjustment expense" is an expense directly allocable to a specific claim and shall include but not be limited to all Supplementary Payments as defined under the Policy; all court costs, fees and expenses; costs of all attorneys, witnesses, experts, depositions, reported or recorded statements, summonses, service of process, legal transcripts or testimony, copies of any public records; alternative dispute resolution; interest; investigative services, non-employee adjusters, medical examinations, autopsies, medical cost containment; declaratory judgment, subrogation, and any other fees, costs or expenses reasonably chargeable to the investigation, negotiation, settlement or defense of a claim or a loss under the Policy. "Allocated loss adjustment expense" shall not include the fees, charges or costs of a third party administrator engaged to provide claim service or related services.

D.   Conditions

1.   Subrogation

We have your rights to recover sums that are reimbursable under this endorsement from anyone liable for the injury or damages.  You will do everything necessary to protect those rights for us and to help us enforce them.

If we recover any payment made under this policy from anyone liable for injury or damages, the recovered amount will first be applied to any payments made by us in excess of the deductible amount.  The remainder of the recovery will then be applied to reduce the deductible amount reimbursed or reimbursable by you as respects that injury or damages.

2.   Rights and Duties

a.   Except as otherwise indicated herein, the terms of the policy, including those with respect to our rights and duties to defend any "suit" seeking damages, investigate any "occurrence" and settle any claim or "suit" that may result and your duties in the event of an "occurrence," claim or "suit" continue to apply irrespective of the application of this *(these)* deductible amount*(s)*.

b.   Payment of amounts reimbursable under this endorsement.

(1)   The first Named Insured shown in the declarations is authorized to and shall reimburse us for all amounts paid by us on behalf of all Named Insureds.

(2)   Each Named Insured is jointly and severally liable for all reimbursements due us under this endorsement.

(3)   You must promptly pay us for all amounts for which you are responsible under this endorsement and promptly reimburse us for any such amounts that we pay upon receipt of a billing from us.  If you fail to do so, we will cancel this policy.

EXHIBIT A, PAGE 52


**ZURICH**

# Home builders protective insurance policy endorsement

Steadfast Insurance Company
Dover, Delaware
Administrative Offices - 1400 American Lane, Schaumburg, Illinois  60196-1056

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer Code | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| HBP 3696726-00 | 08-01-2002 | 08-01-2003 | 08-01-2002 | 75-428-000 | -0- | -0- |

NAMED INSURED:  VAN DAELE HOMES
ADDRESS: 2900 ADAMS STREET, SUITE C-25, RIVERSIDE, CA  92504-4378

Endorsement

| This endorsement modifies insurance provided by the following:<br>Home Builders Protective Insurance Policy Form |
|---|

### BLANKET WAIVER OF SUBROGATION

THE FOLLOWING IS ADDED TO THE "TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US" CONDITION:

IF YOU ARE REQUIRED BY A WRITTEN CONTRACT OR AGREEMENT, WHICH IS EXECUTED BEFORE A LOSS, TO WAIVE YOUR RIGHTS OF RECOVERY FROM OTHERS, WE AGREE TO WAIVE OUR RIGHTS OF RECOVERY.  THIS WAIVER OF RIGHTS APPLIES ONLY WITH RESPECT TO THE ABOVE CONTRACT(S) AND SHALL NOT BE CONSTRUED TO BE A WAIVER WITH RESPECT TO ANY OTHER OPERATIONS IN WHICH THE INSURED HAS NO CONTRACTUAL INTEREST.

Countersigned this _____ of _____, _____ Authorized Representative_____

EXHIBIT A, PAGE 53

STF-GL-113-A-CW  04 (1/97)


**ZURICH**

# Home builders protective insurance policy endorsement

Steadfast Insurance Company
Dover, Delaware
Administrative Offices - 1400 American Lane, Schaumburg, Illinois  60196-1056

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer Code | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| HBP 3696726-00 | 08-01-2002 | 08-01-2003 | 08-01-2002 | 75-428-000 | -0- | -0- |

NAMED INSURED:  VAN DAELE HOMES
ADDRESS: 2900 ADAMS STREET, SUITE C-25, RIVERSIDE, CA  92504-4378

| Endorsement |
|---|
| This endorsement modifies insurance provided by the following: |
| Home Builders Protective Insurance Policy Form |

BLANKET ADDITIONAL INSURED

IT IS AGREED THAT SECTION II – WHO IS AN INSURED, IS AMENDED TO INCLUDE, AS AN ADDITIONAL INSURED, ANY PERSON OR ORGANIZATION YOU ARE REQUIRED BY WRITTEN CONTRACT TO INCLUDE AS AN ADDITIONAL INSURED. INSURANCE FOR THESE PERSONS OR OGANIZATIONS SHALL BE LIMITED TO THE EXTENT OF THE COVERAGE AND LIMITS OF LIABILITY REQUIRED BY THE WRITTEN CONTRACT AND ONLY WITH RESPECT TO LIABILITY ARISING OUT OF "YOUR WORK" WHETHER PERFORMED FOR THAT INSURED BY OR FOR YOU. THE WRITTEN CONTRACT MUST BE EXECUTED PRIOR TO THE OCCURRENCE OF ANY LOSS, THE EXTENT OF COVERAGE AND THE LIMITS OF LIABILITY OF THIS CONTRACT SHALL NOT INCREASE THE LIMITS STATED IN SECTION III – LIMITS OF INSURANCE, OF THE EXTENT OF COVERAGE STATED IN THIS POLICY.

Countersigned this _____ of _____, _____ Authorized Representative_____

EXHIBIT A, PAGE 54

STF-GL-113-A-CW 05  (1/97)


**ZURICH**

# Home builders protective insurance policy endorsement

**Steadfast Insurance Company**
Dover, Delaware
Administrative Offices - 1400 American Lane, Schaumburg, Illinois  60196-1056

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer Code | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| HBP 3696726-00 | 08-01-2002 | 08-01-2003 | 08-01-2002 | 75-428-000 | -0- | -0- |

NAMED INSURED:  VAN DAELE HOMES
ADDRESS: 2900 ADAMS STREET, SUITE C-25, RIVERSIDE, CA  92504-4378

Endorsement

| This endorsement modifies insurance provided by the following: |
|---|
| Home Builders Protective Insurance Policy Form |

CANCELLATION CONDITIONS AMENDMENT

IT IS AGREED THAT PART 2. OF CONDITION A – CANCELLATION, IS DELETED AND REPLACED BY THE FOLLOWING:

2.  WE MAY CANCEL, NON-RENEW OR MAKE MATERIAL CHANGES TO THIS POLICY BY MAILING OR DELIVERING TO THE FIRST NAMED INSURED WRITTEN NOTICE OF CANCELLATION AT LEAST:

A.  10 DAYS BEFORE THE EFFECTIVE DATE OF CANCELLATION IF WE CANCEL FOR NON-PAYMENT OF PREMIUM OR NON-COMPLIANCE WITH LOSS CONTROL RECOMMENDATIONS;

B.  90 DAYS BEFORE THE EFFECTIVE DATE OF CANCELLATION, NON-RENEWAL OR MATERIAL CHANGES IF WE CANCEL FOR ANY OTHER REASON;

C.  90 DAYS NOTICE WILL BE PROVIDED BEFORE THE EFFECTIVE DATE OF CANCELLATION FOR ALL CERTIFICATE HOLDERS, EXCEPT FOR NON-PAYMENT OF PREMIUM, AS REQUIRED BY WRITTEN CONTRACT

ALL OTHER TERMS, CONDITIONS AND AGREEMENTS REMAIN THE SAME.

Countersigned this ____ of _____, _____ Authorized Representative_____

STF-GL-113-A-CW 06 (1/97)



# Home builders protective insurance policy endorsement

Steadfast Insurance Company
Dover, Delaware
Administrative Offices - 1400 American Lane, Schaumburg, Illinois 60196-1056

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer Code | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| HBP 3696726-00 | 08-01-2002 | 08-01-2003 | 08-01-2002 | 75-428-000 | -0- | -0- |

**NAMED INSURED:** VAN DAELE HOMES
**ADDRESS:** 2900 ADAMS STREET, SUITE C-25, RIVERSIDE, CA 92504-4378
Endorsement

| This endorsement modifies insurance provided by the following: |
|---|
| Home Builders Protective Insurance Policy Form |

## BROAD FORM NAMED INSURED

THE NAMED INSURED SHOWN IN THE DECLARATIONS INCLUDES ANY CORPORATION, SUBSIDIARY, FIRM, ORGANIZATION, PARTNERSHIP OR ANY OTHER ENTITY AS EXISTED, AS NOW EXISTS, OR MAY HERE AFTER BE CONTROLLED, FORMED OR ACQUIRED WHERE THE FIRST NAMED INSURED SHOWN IN THE DECLARATIONS HAS OWNERSHIP AND/OR MANAGEMENT CONTROL FOR PROVIDING INSURANCE.

Countersigned this ____ of _____, _____ Authorized Representative_____

EXHIBIT A, PAGE 56

STF-GL-113-A-CW 07 (1/97)



# Home Builders Protective Policy

Office copy

*Steadfast Insurance Company*

EXHIBIT A, PAGE 57

STF-GL-620-A  (3/01)

**Zurich N.A. Construction**

12222 Merit Drive, Suite 700
Dallas, TX 75251
Direct 214/866-1262, Fax 214/866-1249
E-mail address: wendy.ewing@zurichna.com

November 10, 2003

Lockton Companies
Attn: Gizelda Parr
19800 Macarthur Blvd, Ste 550
Irvine, CA 92612

RE:    Van Daele Homes

Dear Gizelda,

Attached are endorsements I received from processing on the above account. While I have reviewed the endorsement for accuracy and completeness in our office, I ask that you also review.

If you have any questions or if I can be of additional assistance, please let me know.

Sincerely,

Brian Emery
Associate Account Executive

Attachment

EXHIBIT A, PAGE 58


**ZURICH**

# Home builders protective insurance policy endorsement

Steadfast Insurance Company
Dover, Delaware
Administrative Offices - 1400 American Lane, Schaumburg, Illinois  60196-1056

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer Code | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| HBP 3696726-00 | 08-01-2002 | 08-01-2003 | 03-12-2003 | 75-428-000 | $745,428.00 | -0- |

NAMED INSURED:  VAN DAELE DEVELOPMENT CORPORATION
ADDRESS: 2900 ADAMS STREET, SUITE C-25, RIVERSIDE, CA  92504-4378
Endorsement #012

| This endorsement modifies insurance provided by the following: Home Builders Protective Insurance Policy Form |
|---|

THE POLICY IS AMENDED AS FOLLOWS:

FOR THE POLICY PERIOD OF 8/01/2002 TO 8/01/2003 THE REVENUE WILL BE ADDING $91,914,772 AT A RATE OF $8.11 IN LIEU OF THE PREVIOUS RATE OF $7.05.

THE ADDITIONAL PREMIUM:$745,428.00

Countersigned this _____ of _____, _____ Authorized Representative_____

EXHIBIT A, PAGE 59

STF-GL-113-A-CW (1/97)

| 100% Q CHECKLIST | Steadfast Insurance Company |
|---|---|

**HOME BUILDERS PROTECTIVE POLICY**

**ACCOUNT INFORMATION**

**Insured Name: VAN DAELE DEVELOPMENT CORP.**

**Underwriting Contact Name: Brian Emery**

✓ INDICATES THAT THIS INFORMATION HAS BEEN 100% QUALITY ASSURED

**INSURED INFO VERIFIED:**
- ☑ Name Insured
- ☑ Mailing Address
- ☑ Eff. /Exp. Date
- ☐ Agency Info

**APPEARANCE:**
- ☑ Spelling/Grammar
- ☑ Legibility
- ☑ Copy/Paper Quality

**MAILED:**
- ☑ Insured Copy (Agent or AAE)
- ☑ Agent Copy (Agent or AAE)
- ☑ Extra Copy (AAE)
- ☑ No Name (File)
- ☑ Overnight Mail
- ☑ DDC copy

**INSTRUCTIONS:**

| Policy Number HBP 3867320-00 | NEW | RENEWAL | ENDT. |
|---|---|---|---|
| Limits of Liability | YES | NO | |
| Wording for the Composite Rate | YES | NO | |
| Coverage Included | YES | NO | |

*I have personally assured the quality of these documents for accuracy in all of the areas checked above. You can be certain that I want to deliver a product of the highest quality to you. If you have any questions, need any additional assistance, or if I have failed to meet your expectations, please give me a call.*

**Signed:** Paul Donlon                    **Date:** 11/ 03 /03

**Phone: (847) 874-8179**                    **Fax: (847) 874-5683**

EXHIBIT A, PAGE 60

# Zurich N.A. Construction

12222 Merit Drive, Suite 700
Dallas, TX 75251
Direct 214/866-1262, Fax 214/866-1249
E-mail address: wendy.ewing@zurichna.com

September 29, 2003

Lockton Companies
Gizelda Parr
19800 MacArthur Blvd, Ste 550
Irvine, CA 92612

RE:    Van Daele Development Corporation

Dear Gizelda,

Attached are endorsements I received from processing on the above account. While I have reviewed the endorsement for accuracy and completeness in our office, I ask that you also review.

If you have any questions or if I can be of additional assistance, please let me know.

Sincerely,



Brian Emery
Associate Account Executive



Attachment

EXHIBIT A, PAGE 61


**ZURICH**

# Home builders protective insurance policy endorsement

Steadfast Insurance Company
Dover, Delaware
Administrative Offices – 1400 American Lane, Schaumburg, Illinois  60196-1056

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of  End. | Producer Code | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| HBP 3696726-00 | 08-01-2002 | 08-01-2003 | 03-12-2003 | 75-428-000 | -0- | -0- |

NAMED INSURED:  VAN DAELE DEVELOPMENT CORPORATION
ADDRESS: 2900 ADAMS STREET, SUITE C-25, RIVERSIDE, CA  92504-4378
Endorsement  #011

| This endorsement modifies insurance provided by the following: |
|---|
| Home Builders Protective Insurance Policy Form |

THE POLICY IS AMENDED AS FOLLOWS:

MURIETTA 230, LLC IS ADDED TO THE NAMED INSURED SCHEDULE.

ANY PREMIUM CHANGE WILL BE SUBJECT AT AUDIT.

Countersigned this ____ of _____, _____ Authorized Representative_____

EXHIBIT A, PAGE 62

STF-GL-113-A-CW (1/97)



# Home builders protective insurance policy endorsement

Steadfast Insurance Company
Dover, Delaware
Administrative Offices – 1400 American Lane, Schaumburg, Illinois  60196-1056

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer Code | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| HBP 3696726-00 | 08-01-2002 | 08-01-2003 | 08-01-2002 | 75-428-000 | -0- | -0- |

NAMED INSURED:  VAN DAELE DEVELOPMENT CORPORATION
ADDRESS: 2900 ADAMS STREET, SUITE C-25, RIVERSIDE, CA  92504-4378

Endorsement  #010

| This endorsement modifies insurance provided by the following: Home Builders Protective Insurance Policy Form |
|---|

THE POLICY IS AMENDED AS FOLLOWS:

NORTH CORONA 253, LLC IS ADDED TO THE NAMED INSURED SCHEDULE.

ANY PREMIUM CHANGE WILL BE PICKED UP AT AUDIT.

Countersigned this ____ of _____, _____ Authorized Representative_____

EXHIBIT A, PAGE 63

STF-GL-113-A-CW (1/97)

**Zurich N.A. Construction**

12222 Merit Drive, Suite 700
Dallas, TX 75251
Direct 214/866-1262, Fax 214/866-1249
E-mail address: wendy.ewing@zurichna.com

July 18, 2003

Lockton Insurance
Attn: Lyne DeCuir
19800 MacArthur Blvd, Ste 550
Irvine, CA 92612

RE:    Van Daele Homes

Dear Lyne,

Attached are endorsements I received from processing on the above account. While I have reviewed the endorsement for accuracy and completeness in our office, I ask that you also review.

If you have any questions or if I can be of additional assistance, please let me know.

Sincerely,

Brian Emery
Associate Account Executive

EXHIBIT A, PAGE 64



**ZURICH**

# Home builders protective insurance policy endorsement
Steadfast Insurance Company
Dover, Delaware
Administrative Offices - 1400 American Lane, Schaumburg, Illinois  60196-1056

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of  End. | Producer Code | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| HBP3696726-00 | 08/01/2002 | 08/01/2003 | 08/01/2002 | 75428-000 | -0- | -0- |

NAMED INSURED:  VAN DAELE HOMES
                  PER NAMED INSURED ENDORSEMENT
ADDRESS: 2900 ADAMS ST, STE C-25
             RIVERSIDE, CA 92504-4378

#### Endorsement  #009

| This endorsement modifies insurance provided by the following: |
|---|
| Home Builders Protective Insurance Policy Form |

In consideration of no change in premium, **TERM EXTENSION – DESIGNATED PROJECT ENDORSEMENT** has been added to this policy.

The Home Builders Protective Insurance Policy Declarations (STF-GL-D 620A) **ITEM 4. Self Insured Retention aggregate – all occurrences** is amended to reflect $500,000 limit.

Countersigned this _____ of _____, _____ Authorized Representative _McSuly  thfr_

EXHIBIT A, PAGE 65

STF-GL-113-A-CW (1/97)



**ZURICH**

# Home builders protective insurance policy endorsement

Steadfast Insurance Company
Dover, Delaware
Administrative Offices - 1400 American Lane, Schaumburg, Illinois  60196-1056

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of  End. | Producer Code | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| HBP3696726-00 | 08/01/2002 | 08/01/2003 | 08/01/2002 | 75428-000 | -0- | -0- |

NAMED INSURED: VAN DAELE HOMES
PER NAMED INSURED ENDORSEMENT
ADDRESS: 2900 ADAMS ST, STE C-25
RIVERSIDE, CA 92504-4378

Endorsement  #009

| This endorsement modifies insurance provided by the following: |
|---|
| Home Builders Protective Insurance Policy Form |

### TERM EXTENSION – DESIGNATED PROJECT ENDORSEMENT

If we non-renew this policy, the policy expiration date shall be extended on the Project(s) shown in the Schedule below for all work that has commenced during the year prior to the Policy Expiration Date of 05/29/2003, until the earlier of (a) close of escrow on all such homes/units/structures or (b) 08/01/2004.  As set forth in the Policy, the Limits of Insurance shall also apply to the Home Builder's Limited Warranty issued to those owners of homes/units/structures closed during the extension term.

All other terms, conditions and exclusions of this Policy remain unchanged.

### SCHEDULE

Project:  *All projects that have started vertical construction on or before 05/29/2003.*

Countersigned this _____ of _____, _____ Authorized Representative _~Marlow M Kym~_

EXHIBIT A, PAGE 66

STF-GL-113-A-CW (1/97)



# Home builders protective insurance policy endorsement

Steadfast Insurance Company
Dover, Delaware
Administrative Offices - 1400 American Lane, Schaumburg, Illinois  60196-1056

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer Code | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| HBP3696726-00 | 08/01/2002 | 08/01/2003 | 08/01/2002 | 75428-000 | -0- | -0- |

NAMED INSURED:  VAN DAELE HOMES
               PER NAMED INSURED ENDORSEMENT
ADDRESS: 2900 ADAMS ST, STE C-25
             RIVERSIDE, CA 92504-4378

Endorsement  #008

| This endorsement modifies insurance provided by the following: |
|---|
| Home Builders Protective Insurance Policy Form |

ENDORSEMENT #002 IS HEREBY DELETED IN ITS ENTIRETY, AND REPLACED WITH THE FOLLOWING:

a)   FIRST NAMED INSURED IS AMENDED TO READ:  VAN DAELE DEVELOPMENT CORPORATION
b)   AS RESPECTS TO NAMED INSURED SCHEDULE – THE FOLLOWING IS CORRECTED TO READ: FRENCH VALLEY 156/AF XXVIII, L.L.C.
c)   PERSONAL AND ADVERTISING INJURY LIMIT IS AMENDED TO $5,000,000; IN LIEU OF $1,000,000
d)   AS RESPECTS TO DEDUCTIBLE ENDORSEMENT - $50,000 DEDUCTIBLE APPLIES TO BOTH COVERAGE A AND COVERAGE B
e)   AS RESPECTS TO CANCELLATION CONDITIONS AMENDMENT PARAGRAPH 2A. IS DELETED

THERE IS NO CHANGE IN PREMIUM.

Countersigned this _____ of _____, _____ Authorized Representative _____

EXHIBIT A, PAGE 67

STF-GL-113-A-CW (1/97)

# Zurich N.A. Construction

12222 Merit Drive, Suite 700
Dallas, TX 75251
Direct 214/866-1262, Fax 214/866-1249
E-mail address: wendy.ewing@zurichna.com

July 8, 2003

Lockton Companies
Attn: Lyne DeCuir
19800 Macarthur Blvd, Ste 550
Irvine, CA 92612

RE:  Van Daele Homes

Dear Lyne,

Attached are endorsements I received from processing on the above account. While I have reviewed the
endorsement for accuracy and completeness in our office, I ask that you also review.

If you have any questions or if I can be of additional assistance, please let me know.

Sincerely,

Brian Emery
Associate Account Executive

EXHIBIT A, PAGE 68


**ZURICH**

## Home builders protective insurance policy endorsement

Steadfast Insurance Company
Dover, Delaware
Administrative Offices - 1400 American Lane, Schaumburg, Illinois 60196-1056

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer Code | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| HBP 3696726-00 | 08-01-2002 | 08-01-2003 | 04-01-2003 | 75-428-000 | -0- | -0- |

NAMED INSURED: VAN DAELE DEVELOPMENT CORPORATION
ADDRESS: 2900 ADAMS STREET, SUITE C-25, RIVERSIDE, CA 92504-4378
Endorsement #007

| This endorsement modifies insurance provided by the following: |
|---|
| Home Builders Protective Insurance Policy Form |

AS RESPECTS TO THE NAMED INSURED SCHEDULE THE FOLLOWING CHANGES APPLY:

NORTH CORONA 253 LLC IS DELETED IN ITS ENTIRETY.

NORTH CORONA 358 IS ADDED.

PREMIUM CHANGE IS SUBJECT TO AUDIT.

EXHIBIT A, PAGE 69

Countersigned this _____ of _____, _____ Authorized Representative_____

STF-GL-113-A-CW (1/97)



**ZURICH**

# Home builders protective insurance policy endorsement

Steadfast Insurance Company
Dover, Delaware
Administrative Offices - 1400 American Lane, Schaumburg, Illinois  60196-1056

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer Code | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| HBP 3696726-00 | 08-01-2002 | 08-01-2003 | 04-01-2003 | 75-428-000 | -0- | -0- |

NAMED INSURED:  VAN DAELE DEVELOPMENT CORPORATION
ADDRESS: 2900 ADAMS STREET, SUITE C-25, RIVERSIDE, CA  92504-4378
Endorsement  #006

| This endorsement modifies insurance provided by the following:<br>Home Builders Protective Insurance Policy Form |
|---|

NORTH CORONA 119/AFF XXXII, LLC IS ADDED TO THE NAMED INSURED SCHEDULE.
ADDITIONAL PREMIUM IS SUBJECT TO AUDIT.

Countersigned this _____ of _____, _____ Authorized Representative_____

EXHIBIT A, PAGE 70

STF-GL-113-A-CW (1/97)

## Zurich N.A. Construction

12222 Merit Drive, Suite 700
Dallas, TX 75251
Direct 214/866-1262, Fax 214/866-1249
E-mail address: wendy.ewing@zurichna.com

June 17, 2003

Lockton Companies
Attn: Mary Molthen
19800 Macarthur Blvd, Ste 550
Irvine, CA 92612

RE:  Van Daele Homes

Dear Mary,

Attached are endorsements I received from processing on the above account. While I have reviewed the endorsement for accuracy and completeness in our office, I ask that you also review.

If you have any questions or if I can be of additional assistance, please let me know.

Sincerely,

Brian Emery
Associate Account Executive

Attachments

EXHIBIT A, PAGE 71



**ZURICH**

# Home builders protective insurance policy endorsement

Steadfast Insurance Company
Dover, Delaware
Administrative Offices - 1400 American Lane, Schaumburg, Illinois  60196-1056

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of  End. | Producer Code | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| HBP3696726-00 | 08/01/2002 | 08/01/2003 | 06/05/2003 | 75428-000 | -0- | -0- |

NAMED INSURED:  VAN DAELE HOMES
ADDRESS: 2900 ADAMS ST, STE C-25
RIVERSIDE, CA 92504-4378

Endorsement  #005

| This endorsement modifies insurance provided by the following: |
|---|
| Home Builders Protective Insurance Policy Form |

In respects to the NAMED INSURED SCHEDULE (STF-GL-113-A-CW 01), the following entity is added:

La Sierra 97, LLC

Additional Premium will be picked up at audit.

Countersigned this  ____ of _____,  _____ Authorized Representative_____

EXHIBIT A, PAGE 72

STF-GL-113-A-CW (1/97)



**ZURICH**

# Home builders protective insurance policy endorsement

### Steadfast Insurance Company
### Dover, Delaware
#### Administrative Offices – 1400 American Lane, Schaumburg, Illinois  60196-1056

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of  End. | Producer Code | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| HBP3696726-00 | 08/01/2002 | 08/01/2003 | 03/24/2003 | 75428-000 | -0- | -0- |

NAMED INSURED:  VAN DAELE HOMES
ADDRESS: 2900 ADAMS ST, STE C-25
          RIVERSIDE, CA 92504-4378

Endorsement  #004

| This endorsement modifies insurance provided by the following: |
|---|
| Home Builders Protective Insurance Policy Form |

In respects to the NAMED INSURED SCHEDULE (STF-GL-113-A-CW 01), the following entity is added:

North Corona 417, LLC

Additional Premium will be picked up at audit.

Countersigned this _____ of _____, _____ Authorized Representative_____

EXHIBIT A, PAGE 73

STF-GL-113-A-CW (1/97)



# Home builders protective insurance policy endorsement

**Steadfast Insurance Company**
Dover, Delaware
Administrative Offices - 1400 American Lane, Schaumburg, Illinois  60196-1056

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer Code | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| HBP3696726-00 | 08/01/2002 | 08/01/2003 | 03/03/2003 | 75428-000 | -0- | -0- |

**NAMED INSURED:  VAN DAELE HOMES**
**ADDRESS: 2900 ADAMS ST, STE C-25**
**RIVERSIDE, CA 92504-4378**

Endorsement  #003

| This endorsement modifies insurance provided by the following: |
|---|
| Home Builders Protective Insurance Policy Form |

In respects to the NAMED INSURED SCHEDULE (STF-GL-113-A-CW 01), the following entity is added:

    Oakmont 96, LLC

**Additional Premium will be picked up at audit.**

Countersigned this _____ of _____, _____ Authorized Representative_____

EXHIBIT A, PAGE 74

STF-GL-113-A-CW (1/97)



**ZURICH**

# Home builders protective insurance policy endorsement

Steadfast Insurance Company
Dover, Delaware
Administrative Offices - 1400 American Lane, Schaumburg, Illinois  60196-1056

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer Code | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| HBP 3696726-00 | 08-01-2002 | 08-01-2003 | 08-01-2002 | 75-428-000 | -0- | -0- |

NAMED INSURED:  VAN DAELE DEVELOPMENT CORPORATION
ADDRESS: 2900 ADAMS STREET, SUITE C-25, RIVERSIDE, CA  92504-4378
Endorsement #002

| This endorsement modifies insurance provided by the following: |
|---|
| Home Builders Protective Insurance Policy Form |

FIRST NAMED INSURED IS AMENDED TO READ:  VAN DAELE DEVELOPMENT CORPORATION

AS RESPECTS TO NAMED INSURED SCHEDULE - THE FOLLOWING IS CORRECTED TO READ:

FRENCH VALLEY 156/AF XXVIII, L.L.C.

PERSONAL AND ADVERTISING INJURY LIMIT IS AMENDED TO $5,000,000 IN  LIEU OF $1,000,000.

AS RESPECTS TO SELF INSURED RETENTION ENDORSEMENT - $250,000 SELF INSURED
RETENTION APPLIES TO BOTH COVERAGE A AND COVERAGE B AS ATTACHED.

AS RESPECTS TO CANCELLATION CONDITIONS AMENDMENT PARAGRAPH 2 A. IS DELETED.

HOME BUILDERS PROTECTIVE INSURANCE POLICY (06/01) IS DELETED IN ITS ENTIRETY.

HOME BUILDERS PROTECTIVE INSURANCE POLICY (03/01) IS ADDED AS ATTACHED.

THERE IS NO CHANGE IN PREMIUM.

Countersigned this _____ of _____, _____ Authorized Representative _____

EXHIBIT A, PAGE 75

STF-GL-113-A-CW (1/97)


**ZURICH**

# Home builders protective insurance policy endorsement
### Steadfast Insurance Company
### Dover, Delaware
### Administrative Offices - 1400 American Lane, Schaumburg, Illinois  60196-1056

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer Code | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| HBP 3696726-00 | 08-01-2002 | 08-01-2003 | 08-01-2002 | 75-428-000 | -0- | -0- |

**NAMED INSURED:  VAN DAELE DEVELOPMENT CORPORATION**
**ADDRESS: 2900 ADAMS STREET, SUITE C-25, RIVERSIDE, CA  92504-4378**
Endorsement #002

| This endorsement modifies insurance provided by the following: |
|---|
| Home Builders Protective Insurance Policy Form |

FIRST NAMED INSURED IS AMENDED TO READ:  VAN DAELE DEVELOPMENT CORPORATION

AS RESPECTS TO NAMED INSURED SCHEDULE - THE FOLLOWING IS CORRECTED TO READ:

FRENCH VALLEY 156/AF XXVIII, L.L.C.

PERSONAL AND ADVERTISING INJURY LIMIT IS AMENDED TO $5,000,000 IN  LIEU OF $1,000,000.

AS RESPECTS TO DEDUCTIBLE ENDORSEMENT - $250,000 ~~DEDUCTIBLE~~ *Self Insurance Retention* APPLIES TO BOTH COVERAGE A AND COVERAGE B AS ATTACHED.

AS RESPECTS TO CANCELLATION CONDITIONS AMENDMENT PARAGRAPH 2 A. IS DELETED.

HOME BUILDERS PROTECTIVE INSURANCE POLICY (06/01) IS DELETED IN

HOME BUILDERS PROTECTIVE INSURANCE POLICY (03/01) IS ADDED AS A

THERE IS NO CHANGE IN PREMIUM.

*NO*

*Mike: Wolten is requesting a signature on this. Please sign so I can mail to them. Thanks, Retta*

Countersigned this ____ of _____, _____   Authorized Representative _____

EXHIBIT A, PAGE 76

STF-GL-113-A-CW (1/97)


**ZURICH**

# Home builders protective insurance policy endorsement

Steadfast Insurance Company
Dover, Delaware
Administrative Offices - 1400 American Lane, Schaumburg, Illinois  60196-1056

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer Code | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| HBP 3696726-00 | 08-01-2002 | 08-01-2003 | 08-01-2002 | 75-428-000 | -0- | -0- |

NAMED INSURED:  VAN DAELE DEVELOPMENT CORPORATION
ADDRESS: 2900 ADAMS STREET, SUITE C-25, RIVERSIDE, CA  92504-4378
Endorsement #002

This endorsement modifies insurance provided by the following:
Home Builders Protective Insurance Policy Form

FIRST NAMED INSURED IS AMENDED TO READ:  VAN DAELE DEVELOPMENT CORPORATION

AS RESPECTS TO NAMED INSURED SCHEDULE - THE FOLLOWING IS CORRECTED TO READ:

FRENCH VALLEY 156/AF XXVIII, L.L.C.

PERSONAL AND ADVERTISING INJURY LIMIT IS AMENDED TO $5,000,000 IN  LIEU OF $1,000,000.

AS RESPECTS TO DEDUCTIBLE ENDORSEMENT - $250,000 DEDUCTIBLE APPLIES TO BOTH
COVERAGE A AND COVERAGE B AS ATTACHED.

AS RESPECTS TO CANCELLATION CONDITIONS AMENDMENT PARAGRAPH 2 A. IS DELETED.

HOME BUILDERS PROTECTIVE INSURANCE POLICY (06/01) IS DELETED IN ITS ENTIRETY.

HOME BUILDERS PROTECTIVE INSURANCE POLICY (03/01) IS ADDED AS ATTACHED.

THERE IS NO CHANGE IN PREMIUM.

Countersigned this ____ of _____, _____ Authorized Representative_____

EXHIBIT A, PAGE 77

STF-GL-113-A-CW (1/97)

# Deductible Endorsement



ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| HBP 3696726-00 | 08/01/2002 | 08/01/2003 | 08/01/2002 | 75-428-000 | $ | $ |

Typed:    02/10/03

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## COMMERCIAL GENERAL LIABILITY
## DEDUCTIBLE ENDORSEMENT

This endorsement applies between you and us. You will reimburse us for deductible amounts that we pay on your behalf. This endorsement will remain in effect on renewals of this policy unless specifically not made a part of such or replaced by a similar endorsement.

This endorsement and its individual sections which include Deductible Amounts, How This *(These)* Deductible(s) Apply*(ies)*, Effect of Deductible*(s)* On Limits of Liability, Definitions and Conditions apply only with respect to the deductibles which are the subject of this endorsement.
REVISED

### SCHEDULE

| | Coverage | | Deductible Amount/Basis | |
|---|---|---|---|---|
| Coverage | A. | Bodily Injury and Property Damage Liability<br>All persons or organization | $ 250,000   each | "occurrence" |
| Coverage | A. | Bodily Injury and Property Damage Liability<br>Any one person or organization | $ _____ each | "claim" |
| Coverage | B. | Personal and Advertising Injury Liability<br>By "offense" – Any one person or organization | $ 250,000   each | "claim" |
| Coverage | C. | Medical Payments | $ _____ each | "accident" |
| Coverage | | Employee Benefits Liability<br>Any one person or organization | $ _____ each | "claim" |
| Other Coverage by | _____ | | $ _____ each | _____ |

### ALLOCATED LOSS ADJUSTMENT EXPENSE *('ALAE')*

Select one:

Option 1.   _____    As respects each "occurrence", each "claim" or each "accident" *(as applicable)*, all "ALAE" is reimbursed in addition to the Deductible Amount.

Option 2   _____    As respects each "occurrence", each "claim" or each "accident" *(as applicable)*, "ALAE" is reimbursed as follows:

EXHIBIT A, PAGE 78

(1)   If the total amount payable for other than "ALAE" for occurrences, claims or accidents is equal to or less than the Deductible Amount(s) or if there is no amount payable other than "ALAE," then all "ALAE" shall be reimbursed, or

(2)   If the total amount payable for other than "ALAE" exceeds the Deductible Amount(s), a prorata share of total "ALAE" based on the ratio of the deductible amount shown in the above schedule divided by the total amount payable for other than "ALAE" as respects each "occurrence", each "claim" or each "accident" is reimbursed.

Option 3   ___X___   As respects each "occurrence", each "claim" or each "accident" (as applicable), "ALAE" is reimbursed and included in the Deductible Amount.

A.   How This (These) Deductible(s) Apply(ies):

You agree to reimburse us for each "occurrence", each "claim" or each "accident" up to the Deductible Amount shown in the Schedule above:

1.   All sums payable for other than "ALAE"; plus

2.   All "allocated loss adjustment expense" as respects each "occurrence", "claim" or "accident";

   a.   When you have elected Option 1 in the Schedule above, in addition to and not limited by the deductible amount, or

   b.   When you have elected Option 2 in the Schedule above, in addition to but not limited by the deductible amount if sums payable for other than "ALAE" are equal to or less than the deductible amount; or a prorata share of total "ALAE" if sums payable for other than "ALAE" exceed the deductible amount, or

   c.   When you have elected Option 3 in the Schedule above, as part of the deductible amount.

B.   Effect of Deductible(s) on Limits of Liability.

All sums payable for other than "ALAE" within the deductible amounts shall be included in determining the most we will pay as defined in Section III of the policy - Limits of Insurance and as stated in the Declarations and as are defined and stated in any endorsement(s) to this policy relating to Limits of Insurance.

C.   Definitions

1.   Each "Occurrence" means:

For any coverage described in the Schedule to which the each "occurrence" basis applies, to all sums payable for other than "ALAE" as the result of an accident, including continuous or repeated exposure to substantially the same harmful conditions, "regardless of the number of persons or organizations who sustain damages or to whom sums are payable because of that "occurrence".

2.   Each "Claim" means:

   a.   Other than Coverage B., for any coverage described in the Schedule to which the each "claim" basis applies, to all sums payable for other than "ALAE" to any one person as the result of an "occurrence". If damages are claimed for care, loss of services or death resulting at any time from bodily injury, a separate deductible amount applies to each person making a claim for such damages. With respect to property damage, any one person is also defined as any one organization.

   b.   For coverage B., to all damages sustained by any one person or organization as the result of an offense.

3.   Each "Accident" means:

**EXHIBIT A, PAGE 79**

For any coverage described in the Schedule to which the each "accident" basis applies, to all sums payable for other than "ALAE" as the result of an accident regardless of the number of persons who sustain medical expenses because of that "accident".

4. "Allocated loss adjustment expense" is an expense directly allocable to a specific claim and shall include but not be limited to all Supplementary Payments as defined under the Policy; all court costs, fees and expenses; costs of all attorneys, witnesses, experts, depositions, reported or recorded statements, summonses, service of process, legal transcripts or testimony, copies of any public records; alternative dispute resolution; interest; investigative services, non-employee adjusters, medical examinations, autopsies, medical cost containment; declaratory judgment, subrogation, and any other fees, costs or expenses reasonably chargeable to the investigation, negotiation, settlement or defense of a claim or a loss under the Policy. "Allocated loss adjustment expense" shall not include the fees, charges or costs of a third party administrator engaged to provide claim service or related services.

D. Conditions

1. Subrogation

   We have your rights to recover sums that are reimbursable under this endorsement from anyone liable for the injury or damages. You will do everything necessary to protect those rights for us and to help us enforce them.

   If we recover any payment made under this policy from anyone liable for injury or damages, the recovered amount will first be applied to any payments made by us in excess of the deductible amount. The remainder of the recovery will then be applied to reduce the deductible amount reimbursed or reimbursable by you as respects that injury or damages.

2. Rights and Duties

   a. Except as otherwise indicated herein, the terms of the policy, including those with respect to our rights and duties to defend any "suit" seeking damages, investigate any "occurrence" and settle any claim or "suit" that may result and your duties in the event of an "occurrence," claim or "suit" continue to apply irrespective of the application of this (these) deductible amount(s).

   b. Payment of amounts reimbursable under this endorsement.

      (1) The first Named Insured shown in the declarations is authorized to and shall reimburse us for all amounts paid by us on behalf of all Named Insureds.

      (2) Each Named Insured is jointly and severally liable for all reimbursements due us under this endorsement.

      (3) You must promptly pay us for all amounts for which you are responsible under this endorsement and promptly reimburse us for any such amounts that we pay upon receipt of a billing from us. If you fail to do so, we will cancel this policy.



**ZURICH**

# HOME BUILDERS PROTECTIVE INSURANCE POLICY

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section VI – Definitions.

## SECTION I – COVERAGES

### COVERAGE A: BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

        **(1)** The amount we will pay for damages is limited as described in Section III – Limits of Insurance; and

        **(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgements or settlements under **Coverages A, B or D,** or "repair costs" under **Coverage C.**

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under **Supplementary Payments – Coverages A, B C and D.**

    **b.** This insurance applies to "bodily injury" or "property damage" only if:

        **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

        **(2)** The "bodily injury" or "property damage" occurs during the policy period.

    **c.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

    **d.** **Coverage A** does not apply to losses, claims, suits or "repair costs" for which insurance is provided by **Coverages C** or **D.**

**2. Exclusions**

In addition to **Common Exclusions** applying to **Coverages A & D,** the following exclusions apply:

This insurance does not apply to:

    **a.** **Contractual Liability**
"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

        **(1)** That the insured would have in the absence of the contract or agreement; or

        **(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.

STF-GL-620-A (3

Copyright 1997, Steadfast Insurance Company

1

b. **Liquor Liability**
"Bodily injury" or "property damage" for which any insured may be held liable by reason of:
(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

c. **Workers' Compensation and Similar Law**
Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

d. **Employer's Liability**
"Bodily injury" to:
(1) An "employee" of the insured arising out of and in the course of:
   (a) Employment by the insured; or
   (b) Performing duties relating to the conduct of the insured's business; or
(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies:
(1) Whether the insured may be liable as an employer or in any other capacity; and
(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

e. **Aircraft, Auto or Watercraft**
"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion does not apply to:
(1) A watercraft while ashore on premises you own or rent;
(2) A watercraft you do not own that is:
   (a) Less that 26 feet long; and
   (b) Not being used to carry persons or property for a charge;
(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" in not owned or rented or loaned to you or the insured;
(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or
(5) "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in Paragraph **g.(2)** or **g.(3)** of the definition of "mobile equipment".

f. **Mobile Equipment**
"Bodily injury" or "property damage" arising out of:
(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or
(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

g. **Damage to Property**
"Property damage" to:
(1) Property you own, rent or occupy;
(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;
(3) Property loaned to you;
(4) Personal property in the care, custody or control of the insured;
(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations;
(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

STF-GL-620-A (3

Copyright 1997, Steadfast Insurance Company

2

Paragraphs **(1), (3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days.   A separate limit of insurance applies to Damage to Premises Rented to You as described in Section III – Limits of Insurance.

Paragraphs **(3), (4), (5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

h.  **Damage to Your Product**
"Property damage" to "your product" arising out of it or any part of it.

i.  **Damage to Your Work**
"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

j.  **Damage to Impaired Property or Property Not Physically Injured**
"Property damage" to "impaired property" or property that has not been physically injured, arising out of:
(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work" or
(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

k.  **Personal and Advertising Injury**
"Bodily injury" arising out of "personal and advertising injury"

l.  **Employment Related Practices**
"Bodily injury" to:
(1) A person arising out of any:

(a) Refusal to employ that person;
(b) Termination  of  that  person's employment; or
(c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at the person; or
(2) The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices describe in paragraphs **(a), (b)** or **(c)** above is directed.
This exclusion applies:
(3) Whether the insured may be liable as an employer or in any other capacity; and
(4) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

Exclusions **b.** through **j.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner.  A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III – Limits of Insurance.

## COVERAGE B: PERSONAL AND ADVERTISING INJURY LIABILITY

1. **Insuring Agreement**

a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.   We may, at our discretion, investigate any offense and settle any claim or "suit" that may result.  But:

STF-GL-620-A (3

Copyright 1997, Steadfast Insurance Company

**(1)** The amount we will pay for damages is limited as described in Section III – Limits of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgements or settlements under **Coverages A** or **B** or **D** or "repair costs" under **Coverage C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A, B, C** and **D**.

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a.** "Personal and advertising injury"

**(1)** Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";

**(2)** Arising out of any publication in any media, if done by or at the direction of the insured with knowledge of its falsity;

**(3)** Arising out of any publication in any media of material whose first publication took place before the beginning of the policy period;

**(4)** Arising out of a criminal act committed by or at the direction of any insured;

**(5)** For which the insured has assumed the liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement;

**(6)** Arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement";

**(7)** Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement";

**(8)** Arising out of the wrong description of the price of goods, products or services stated in your "advertisement";

**(9)** Committed by an insured whose business is advertising, broadcasting, publishing or telecasting. However, this exclusion does not apply to Paragraphs 17.a., b. and c. of "personal and advertising injury" in Section VI -Definitions; or

**(10)** Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**b.** Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirements that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

**COVERAGE C: HOME BUILDERS LIMITED WARRANTY**

**1. Insuring Agreement**

**a.** We will pay those sums you are contractually obligated to pay as "repair costs" for "construction defects" under "Home Builders Limited Warranty" agreements issued by you or on your behalf. We will have the right and duty to defend you against any "suit" seeking those

STF-GL-620-A (3

Copyright 1997, Steadfast Insurance Company

4

"repair costs". However, we will have no duty to defend you against any "suit" seeking "repair costs" for " construction defects" to which this insurance does not apply. We may, at our discretion, investigate any "construction defect" and settle or arbitrate any claim or "suit" that may result. But:

(1) The amount we will pay for "repair costs" is limited as described in Section III – Limits of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgements or settlements under Coverages **A**, **B** or **D** or "repair costs" under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments- Coverages **A**, **B**, **C** and **D**.

b. This insurance applies only to "repair costs" for "construction defects" only if the "repair costs":
(1) Are caused by an "construction occurrence"; and
(2) Arise from "Home Builders Limited Warranty" agreements on "homes" that you sell during the policy period.

c. Coverage **C** does not apply to any losses, claims or suits for which insurance is provided by Coverages **A** or **D**.

2. **Exclusions**

This insurance does not apply to:

a. **Normal Customer Service Expenses**
Any "repair costs" for a "construction defect" which first arises within twelve (12) months of the first sale of a "home". However, this exclusion does not apply to "repair costs" incurred for a "construction defect" of a substantial nature, arising from :
1) A structural failure in the home;
2) The use of materials that are subsequently determined to be defective; or
3) A significant design flaw in the home.

b. **Punch List Items**
"Construction defects" noted at the time of a homeowner walkthrough.
c. **Expected or Intended Construction Defect**
"Repair costs" arising from an expected or intended "construction defect" from the standpoint of the insured.

d. **Failing to Complete the Home**
Any "repair costs" as a result of your failure to complete the "home".
e. **Excluded Causes**
"Construction defect" that is excluded in the "Home Builders Limited Warranty" issued by you or on your behalf.

## COVERAGE D – CONSTRUCTION DAMAGE LIABILITY

1. **Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "property damage" to "your work". We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "construction occurrence" and settle any claim or "suit" that may result. But:

1) The amount we will pay for damages is limited as described in Section III – Limits of Insurance; and

2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgements or settlements under Coverages **A**, **B** or **D**, or "repair costs" under Coverage **C**.

b. This insurance applies to "property damage" only if:
1) The "property damage" is caused by an "construction occurrence" that takes place in the "coverage territory"; and

STF-GL-620-A (3

Copyright 1997, Steadfast Insurance Company

5

2) The "property damage" is to "your work" that you sell or give away during the policy period.

c. No other obligations or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – **Coverages A, B, C** and **D.**

d. **Coverage D** does not apply to any losses, claims, suits or "repair costs" for which insurance is provided by **Coverages A** or **C.**

## 2. Exclusions

See **Common Exclusions - Coverages A & D.**

## COMMON EXCLUSIONS – COVERAGES A & D

This insurance does not apply to:

a. **Expected or Intended Injury**
"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.

b. **Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned, or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At of from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(a) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

STF-GL-620-A (3

Copyright 1997, Steadfast Insurance Company

(b) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes, vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(c) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(b) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, detoxify or neutralize, or in any other way respond to, or assess the effects of "pollutants".

2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirements that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

c. **War**

"Bodily injury" or "property damage" due to war, whether or not declared or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

d. **Recall of Products, Work or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

1) "Your product";
2) "Your work"; or
3) "Impaired property";

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

e. **Asbestos**

"Bodily injury" or "property damage" caused by, or allegedly caused by asbestos either alone or in combination with other substances or factors.

As respects **Coverage A**. only, **Exclusions** b. and c. above do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III – Limits of Insurance.

## SUPPLEMENTARY PAYMENTS – COVERAGES A, B, C AND D

We will pay, with respect to any claim we investigate or settle, any "suit" against you or any insured we defend or "Request for Warranty Performance" we respond to:

1. All expenses we incur.

2. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

3. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

4. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claims or "suit" including actual loss

STF-GL-620-A (3

Copyright 1997, Steadfast Insurance Company

7

of earnings up to $250 a day because of time off from work.

5.  All costs taxed against the insured in the "suit".

6.  Prejudgment interest awarded against the insured on that part of the judgement we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

7.  All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

## SECTION II – WHO IS AN INSURED

1.  If you are designated in the Declarations as:

    a.  An Individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

    b.  A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

    c.  A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

    d.  An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers and directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

2.  Each of the following is also an insured:

    a.  Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited

liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" is an insured for:

(1) "Bodily injury" or "personal injury" :

    (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business;

    (b) To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of Paragraph **(1)(a)** above;

    (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(1)(a)** or **(b)** above; or

    (d) Arising out of his or her providing or failing to provide professional health care services.

(2) "Property damage" to property:

    (a) Owned, occupied or used by,

    (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

b.  Any person (other that your "employee"), or any organization while acting as your real estate manager.

STF-GL-620-A (3

Copyright 1997, Steadfast Insurance Company

8

EXHIBIT A, PAGE 88

c. Any person or organization having proper temporary custody of your property if you die, but only:

(1) With respect to liability arising out of the maintenance or use of the property; and

(2) Until your legal representative has been appointed.

d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

a. "Bodily injury" to a co-"employee" of the person driving the equipment; or

b. "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

4. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed that organization;

c. Coverage B does not apply to "personal and advertising injury" arising out of an offence committed before you acquired or formed the organization; and

d. Coverage C does not apply to "repair costs" arising out of "construction defect" in "homes" sold, given away or abandoned before you acquired or formed that organization.

e. Coverage D does not apply to "property damage" to "your work" that occurred before you acquired or formed that organization.

5. Any person or organization that you have agreed by contract or agreement to add as an insured under this coverage part is an insured, but only with respect to liability arising out of "your work" by or for that insured. However:

a. Coverage under this provision is limited to work performed under that contract or agreement;

b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you entered in that contract or agreement;

c. Coverage B does not apply to "personal and advertising injury" arising out of an offence committed before you entered into that contract or agreement; and

d. Coverage C does not apply to "repair costs" arising out of "construction defect" in "homes" sold, given away or abandoned before you entered into that contract or agreement.

e. Coverage D does not apply to "property damage" to "your work" that occurred before you entered into that contract or agreement.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture, or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of :

a. Insureds;

STF-GL-620-A (3

Copyright 1997, Steadfast Insurance Company

9

b. Claims made or "suits" brought; or

c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

a. Damages under Coverage **A**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

b. Damages under Coverage **B**.

3. The Products-Completed Operations Aggregate Limit is the most we will pay for the sum of:

a. damages under **Coverage A** because of "bodily injury" and "property damage" included in the "products-completed operations hazard"; and

b. damages under **Coverage D** because of "property damage" to "your work". This policy limit will apply to all such "construction occurrence" damages, regardless of when the damages become known.

4. Subject to **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for damages under Coverage **A** because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to **5.** above, the Damage to Premises Rented to You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with the permission of the owner.

7. The Each Home Limit is the most we will pay under Coverage **C** for the sum of all "repair costs" due to

"construction defects" arising out of any one "home" and any one "structure".

8. Subject to **3.** above, the Each Construction Occurrence Limit is the most we will pay under Coverage **D.** for all damages because of all "property damage" arising out of any one "construction occurrence". This policy limit will apply to all such "construction occurrence" damages, regardless of when the damages become known.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – SELF INSURED RETENTION

1. Our obligations under SECTION I – **COVERAGES** to pay damages or "repair costs" applies only to the amounts of damage or "repair costs" in excess of any "Self Insured Retention" amounts stated in the Declarations.

2. Should you refuse to respond to:

a. Any claim or "suit" for damages under **Coverages A, B** or **D**, the insurance provided by this policy will not replace the "Self Insured Retention" provided by "you"; or

b. Any "repair costs" for "construction defects" to which policy applies, we will do so, but you shall reimburse "us" for the amounts we pay up to the applicable "Self Insured Retention" amount.

3. "Self Insured Retention" Amounts

a. The Each Occurrence amount shown in the Declarations is the most you will pay for all "self insured retention" amounts arising out of one "occurrence" or "construction occurrence" or any single loss involving any combination of "occurrence" and "construction occurrence".

EXHIBIT A, PAGE 90

STF-GL-620-A (3

Copyright 1997, Steadfast Insurance Company

b. The Self Insured Retention Aggregate is the most you will pay for all "self insured retention" amounts under this policy. If no value is shown, then the "self insured retention" aggregate shall be unlimited.

The "Self Insured Retention" of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last proceeding period for purposes of determining the "Self Insured Retention" aggregate if any.

3. **Settlement of Claim, "Suit" or "Repair Costs"**

a. Any amount necessary to settle any claim, "suit" or "repair costs" exceeding the "Self Insured Retention" may not be agreed to without our written permission.

b. We may defend and pay any claim, "suit" or "repair cost" that may exceed any of the applicable "Self Insured Retention" amounts shown in the declarations. You will reimburse "us" promptly for the amounts we pay within the applicable "Self Insured Retention".

## SECTION V – HOME BUILDERS PROTECTIVE CONDITIONS

1. **Common Policy Conditions**
   All coverage parts included in this policy are subject to the following conditions.

   a. **Bankruptcy**
      Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

   b. **Changes**
      This policy contains al the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only

by endorsement issued by us and made part of this policy.

   c. **Examination of Your Books and Records**
      We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

   d. **Inspections and Surveys**
      (1) We have the right to:
          (a) Make inspections and surveys at any time;
          (b) Give you reports on the conditions we find; and
          (c) Recommend changes.
      (2) We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:
          (a) Are safe or healthful; or
          (b) Comply with laws, regulations, codes or standards.
      (3) Paragraphs **1.** and **2.** Of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.
      (4) Paragraph **2.** Of this condition does not apply to any inspections, surveys, reports or recommendations we make relative to certification, under state or municipal statues, ordinances or regulations, of boilers, pressure vessels or elevators.

   e. **Premiums**
      The first Named Insured shown in the Declarations:
      1) Is responsible for the payment of all premiums, deductible amounts or "Self Insured Retention"; and
      2) Will be the payee for any return premiums we pay.

   f. **Legal Action Against Us**

STF-GL-620-A (3

Copyright 1997, Steadfast Insurance Company

EXHIBIT A, PAGE 91

No person or organization has a right under this Coverage Part:

**(1)** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**(2)** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant's legal representative.

**g.** **Transfer of Rights and Duties**
Your rights, duties and interests under this policy cannot be transferred or assigned without our advance written consent.

**h.** **Premium Audit**

**(1)** We will compute all premiums for this Coverage part in accordance with our rules and rates.

**(2)** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**(3)** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**i.** **Representations**
By accepting this policy, you agree:

**(1)** The statements in the Declarations are accurate and complete;

**(2)** Those statements are based upon representations you have made to us; and

**(3)** We have issued this policy in reliance upon your representations.

**(4)** You will not procure insurance for all or any part of the "self insured retention" amounts shown in the Declarations.

**j.** **Separation of Insureds**
Except with respect to the Limits of Insurance, and any rights and duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**(1)** As if each Named Insured were the only Named Insured; and

**(2)** Separately to each insured against whom claim is made or "suit" is brought.

**k.** **Transfer of Rights of Recovery Against Others to Us**
If the insured has right to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after a loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**l.** **When We Do Not Renew**
If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.
If notice is mailed, proof of mailing will be sufficient proof of notice.

**m.** **Cancellation**

**(1)** You may cancel this policy by delivering or mailing to "us" either the policy or a written notice stating when the cancellation shall be effective.

**(2)** After the 90th day this policy has been in effect, we may only cancel this policy for nonpayment of:

**(a)** Premiums;

**(b)** Audit premiums from prior policy periods; or

**(c)** Amounts due "us" under the Self Insured Retention shown on in the Declarations.

We will cancel this policy by delivering or mailing to you at the address shown in the Declarations a written notice of cancellation not

STF-GL-620-A (3

Copyright 1997, Steadfast Insurance Company
12

EXHIBIT A, PAGE 92